# The Chicago, Rock Island and Pacific Railway Company

*v.*

## Isabella Herring.

57      59 .
97a ⁴138

1. PASSENGER—*removal from railroad train.* Where a passenger went upon a train of cars, and offered a worthless piece of paper, claiming it to be a pass, and on being informed that it was not a pass, and the passenger refused to pay fare or leave the train, the servants of the company had a right to remove such passenger from the train at a regular station, and they may use the necessary force for the purpose.

2. MEASURE OF DAMAGES. In such a case, it is error to instruct the jury, in estimating damages, that they may consider whether the plaintiff in good faith believed she had a pass, and offered it in good faith, although the paper was not a pass. It was the duty of the passenger, on being informed that it was not a pass, to either pay the fare or leave the train at the first station.

3. FORCE—*unnecessary.* If, in such a case, the employees of a railroad company use more force than is necessary, then the company would be liable to damages, and the question of the good faith of the passenger, believing she had a valid pass, is wholly immaterial in assessing damages.

4. NEW TRIAL—*verdict against the evidence.* Even where the evidence is conflicting, if it preponderates strongly in favor of defendant, a verdict against him should be set aside and a new trial granted, and if refused, the judgment will be reversed for that error.

5. INSTRUCTION—*not calculated to mislead.* Although an instruction may not be properly limited, still if it is not calculated to mislead, that is not ground for reversal.

6. EXEMPLARY DAMAGES. It is not error in such a case to instruct the jury, that if the servants wilfully and negligently injured plaintiff, they would be authorized to give exemplary damages; as they were engaged in the furtherance and execution of the business of the company, the company were liable for the misconduct and negligence of their servants when thus engaged.

APPEAL from the Circuit Court of Henry county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

The opinion states the case.

60          C., R. I. & P. R. R. Co. *v.* HERRING.     [Sept. T.,

Opinion of the Court.

Mr. GEORGE C. CAMPBELL, for the appellants.

Mr. A. C. MASON, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action brought by Isabella Herring against the appellants, for injuries received by the use of unnecessary force and violence in expelling her from a car on the appellants' line. It appears the plaintiff, in October, 1865, entered a car at the town of Joliet, with the intent to proceed to Geneseo. When the conductor asked for her ticket, she offered him a piece of paper with some writing thereon, which, she testified, some person in Joliet had given to her as a pass. He told her it was not a pass, and was worthless.

She testifies that she had one dollar and sixty-five cents in her pocket, and that she told the conductor she had money enough to pay her fare to LaSalle, and that her son would pay on their arrival at Geneseo, but says she did not show any money.

Both the conductor, and another witness, who had charge of the sleeping car, testify that she positively refused either to pay her fare, or any part of it, although the conductor told her he would be obliged to put her off at the next station, if she would not pay, and reasoned with her some minutes in regard to her conduct. The conductor testifies that her answers were "short and crusty," and the witness Pike, swears she used profane language, declaring that she would not pay, and that there were not men enough on the train to put her off. The plaintiff does not claim that she offered to pay, but denies the use of any profane language.

When they arrived at the station, the conductor and Pike testify, she still refused either to pay or leave the car, whereupon they raised her from her seat by the arms, she resisting, and Pike carried her to the platform of the car. She testifies

he then pushed her violently from the platform, and she fell on the ground. Pike testifies that he was compelled to carry her through the car, as she would not walk, but would sit down on the floor, and when they reached the platform of the car, he set her down, thinking she might still pay her fare, and that she at once slid down the steps of her own accord, and threw herself on the ground. The conductor followed her, and as she refused to rise, he lifted her and placed her on the station platform, in charge of the station agent. The plaintiff testifies that she was so badly hurt that she was not able to rise. Pike further testifies, that as he was carrying her through the cars she caught hold of the seats, and that he used no force whatever beyond what was necessary to remove her from the car. He also swears she did not say she had no money. The plaintiff swears that she was made very seriously ill by the bruisings she received, and suffered for a long time

The jury found a verdict for $2500 damages, on which the court rendered judgment, and the defendants appealed.

The court gave for the plaintiff, among other instructions, the following:

" If the jury believe, from the evidence, that the plaintiff entered the train of the defendant, to go to Geneseo, having in her possession what she in good faith supposed and believed to be a 'pass,' and that she in good faith presented said pass to the conductor of the train, the jury may take such facts into consideration, if proved, in estimating the damages in this case, although the paper presented as a pass was not in fact a good pass,—provided the jury further believe, from the evidence, that the defendant or its servants put her off the train in a wrongfully negligent manner."

This instruction was erroneous, and tended to mislead the jury on the question of damages. As the plaintiff had no pass, and was informed by the conductor that the paper which she tendered as such was utterly worthless, it was her

·duty to either pay her fare or to leave the train at the first station, if required to do so by the conductor.  If she refused to do either, the conductor had the right to compel her to leave, and to use the force necessary for that purpose, however repugnant the use of force towards a woman may be to that sentiment of deference and respect for all women, which happily belongs to all classes of American society.  But this is not a question of gallantry or sex, but simply of legal right, and as this plaintiff confessedly declined to pay her fare, the company was under no obligation to carry her, and had a right, by its agents, to use all the force required to remove her.  It would be preposterous to demand of railway companies, that they should permit all women, who decline to pay their fares, to travel unmolested in their cars, or that force should not be used to expel them, if they should so far unsex themselves as to make a resort to force necessary.  The only basis of recovery in this case, if any, was that more force was used than was necessary.  If there was, that was a ground for damages, and the only ground; and the question as to whether the plaintiff had supposed herself to have a pass, became wholly immaterial, after she was informed that the pretended pass was of no value.  The instruction should not have been given.

But, independently of this instruction, we are of opinion this case should be submitted to another jury, on its merits. The right to recover, rests solely on the evidence of the plaintiff. She is contradicted, in some minor matters, by one of her own witnesses, and in all the material points by the conductor, and by Pike, who was called to his aid from the sleeping car.  It is said, their agency in the transaction impairs the credit of their testimony, but certainly their interest in the suit is much less than that of the plaintiff, and their account of the affair is at least as probable.

Counsel for the appellants object to the sixth instruction. As an abstract proposition, it is not sufficiently limited, but in this case it could not mislead the jury, since the acts of the

defendants' servants, even if willful, were committed while engaged in the furtherance and execution of the defendants' business, and the defendants would be liable for their misconduct, if they were guilty of any, as well as for their negligence. This has been often decided in this and other courts.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*