The Chicago, Burlington & Quincy Railroad Co.

*v.*

Elizabeth Gregory, Administratrix, etc.

1. Evidence—*in an action to recover for the death of a party caused by the negligence of the defendant.* Before a recovery can be had in such a case, it is necessary to prove, *first,* that the accident was occasioned by the wrongful act, neglect or default of the defendant, and *second,* that the party injured was in the exercise of due and proper care, and that the injury was not the result of his own negligence and want of proper precaution.

2. But while it is the general rule, that it must affirmatively appear, in such cases, that the party injured was in the exercise of due care and caution, yet this material fact may be made to appear by circumstantial, as well as by direct evidence.

Syllabus.

3. New trial—*verdict against the evidence.* The rule is, where there is evidence from which the jury could properly find their verdict, it will not be disturbed, although the evidence might, in the opinion of the appellate court, justify a different construction.

4. But if there is a total failure of evidence, or if the verdict is manifestly against the weight of the .evidence, it is the duty of the court to award a new trial.

5. Negligence—*in railroads.* In an action against a railroad company to recover for the death of the plaintiff's intestate, alleged to have been occasioned by the negligence of the company, it appeared the deceased was a fireman on the locomotive of the company, and while passing a station in the night time, he was struck and killed. The circumstances showed that he was acting in the line of his duty, looking out for signals, and while so doing, and in the exercise of due care and caution, he was struck by a "mail-catcher" which had been placed near the track by the company. Two other accidents had previously occurred from the same cause, of which the company had notice: *Held,* the company was guilty of gross negligence in having omitted to place the "mail-catcher" a safe distance from the track.

6. Same—*of comparative negligence.* It was considered, however, that even if the fireman had been guilty of negligence in leaning out from the gangway or side window of the locomotive while upon the lookout for signals, his negligence in that regard was slight in comparison with that of the company in permitting the "mail-catcher" to stand so near the track, after notice had been given that it was dangerous to the railroad operatives.

7. The doctrine is, that although the injured party was guilty of negligence, yet if his negligence was slight in comparison with that of the defendant, the injured party will be entitled to recover.

8. Railway companies have no right to erect machines, for any purpose, so near the track that the slightest indiscretion on the part of the employee will prove fatal. It is culpable negligence so to do.

9. Same—*liability of the common master for injury to a servant, received through the negligence of a fellow servant.* A fireman upon a railroad locomotive was killed by coming in collision with a mail-catcher while the train was in motion, the accident being occasioned by the negligence of the company in permitting the mail-catcher to be placed in too close proximity to the track. In an action by the administrator of the deceased, to recover damages against the company, under the statute, it was *held,* those servants of the company whose duty it was to see that the mail-catcher was placed a safe and proper distance from the track, could not be regarded as fellow servants of the deceased *in the same line of employment,* so as to prevent a recovery in the action, against the common master.

| 58 | 272 |
| 93a | 4 87 |
| 58 | 272 |
| 87a | 2 137 |
| 58 | 272 |
| 106a | 1 602 |
| d109a | 5 497 |
| 109a | 5 550 |
| 58 | 272 |
| e210 | 5 231 |
| 211 | 459 |
| 58 | 272 |
| e214 | 5 127 |
| e214 | 5 467 |
| 114a | 5 357 |
| 58 | 272 |
| 115a | 5 625 |

10. OPINIONS OF EXPERTS—*how far conclusive.* In an action by an administrator to recover damages for the death of his intestate, who was a fireman upon a railroad locomotive, and whose death was caused by coming in collision with a mail-catcher standing near the track, it was *held*, the opinions of railroad men, as experts, that the mail-catcher in its proximity to the track was not dangerous, were not conclusive on that question, but the jury might consider any other evidence in the case on the subject, and it was proper to so instruct the jury.

11. EVIDENCE—*to show no want of proper care on the part of the plaintiff.* In such case, where it was shown the accident occurred in the night time, and while the fireman who was killed was acting in the line of his duty, watching for signals in approaching a station, it was proper to instruct the jury, on behalf of the plaintiff, that they might consider the fact that the alleged casualty happened in the darkness of the night, and that it was customary and usual for the firemen, in the discharge of their duties, to look out of the side window or gangway of the locomotive, for the purpose of discovering signals. Such facts were proper to be considered, as tending to show the exercise of due care and caution on the part of the deceased at the time of the accident.

12. ERROR WILL NOT ALWAYS REVERSE—*admission of incompetent evidence.* The admission of hearsay evidence, although incompetent, will not necessarily operate to reverse the judgment, where the same facts were testified to by another witness who had direct knowledge of them, and no injury could therefore have resulted to the party against whom the evidence was admitted.

13. INSTRUCTIONS—*should be based upon the evidence.* An instruction, based upon a hypothetical state of facts not found in the case, ought not to be given, for the reason that it would direct the attention of the jury to issues not involved, and would therefore be erroneous, although such an instruction might state accurately a correct abstract legal principle.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Messrs. BROWNING & BUSHNELL, for the appellant.

Messrs. WARREN & WHEAT, and Messrs. WHEAT & MARCY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought under the act of 1853, by the administratrix, to recover damages for the death of Charles M.

Bennett, whose death, it is alleged, was occasioned by the wrongful act and negligence of the railroad company.

The accident occurred at Cliola station, on the appellant's road. The deceased, at the time he received the injury which resulted in his death, was a fireman on the locomotive, and in the employ of the company. It is alleged that the company negligently and carelessly permitted the mail-catcher to stand in close proximity to the track, thereby greatly and unnecessarily endangering the lives and safety of the employees of the company while in discharge of their duties, and that by reason of such carelessness and negligence, Bennett, while in the discharge of his duties as fireman, and in the exercise of due care and caution, was brought in sudden and violent contact therewith, and from the collision received the injuries from which he died.

What are called "mail-catchers" are of modern invention, and it appears they have been placed upon lines of railroads, under the supervision of the postal department of the United States. They are placed at the side of the track, for the purpose of facilitating the transportation of the mails. From the evidence, we understand they are of uniform construction, and that it is the general practice to place them about the same distance from the track. A witness, who is familiar with their structure and use, describes them and their position with regard to the track, as follows:

The post, or crane, to which the mail-bag is suspended, is fixed in a square box filled with stone or other material, to give sufficient weight to overcome the resistance of the instrument attached to the car that catches the bag. The distance of the upright post which supports the arm from which the bag is suspended, from the inside of the nearest rail, is seven feet. The distance from the end of the arm from which the bag is suspended, to the inside of the nearest rail, is three and a half feet. The upper arm is ten feet above the rail; the lower arm is seven and a half feet above the rail, and drops when the bag is removed; and the projecting arm of the crane,

from which the mail-bag is suspended, is from seven to ten inches from the side of the coaches as they pass, varying in distance according to the construction of the different coaches used.

Witnesses of large experience, whose depositions were read upon the trial, all concur in the opinion, that when the mail-catchers are placed at the proper and usual distance from the track, they are not dangerous to the operatives of the road. They can be readily seen at a considerable distance, and by the use of ordinary care and prudence all danger can be avoided. It appears they have been quite generally introduced on all roads that run fast trains, and they have operated to facilitate the transmission of the mails on express trains, by enabling them to receive the mail while running at full speed.

The testimony of a number of witnesses familiar with the operation of these contrivances, has been taken, and it does not appear that any accident, within their knowledge, has occurred from their use, except the one at Cliola station on the appellant's road, although such inventions have been in use for a considerable period, in this State. It may therefore be assumed, as a fact established by the evidence, that if the mail-catcher is placed a proper distance from the track, it is not at all dangerous to the employees of the company operating the trains.

Among the questions of fact submitted to the jury, were, 1st, was Bennett killed by a collision with the mail-catcher at Cliola station? 2d, was it placed at a proper distance from the track to render it safe to the operatives of the road, using ordinary care and caution? and 3d, was the company guilty of negligence in permitting it to stand in such close proximity to the track as would make it dangerous?

The finding of the jury was against the appellant, on these issues, and by the fourth assignment of errors it is insisted that the verdict is against the law and the evidence.

The law is well settled, that before a party can recover in such cases, it is necessary to prove, 1st, that the accident was occasioned by the wrongful act, neglect or default of the defendant, and 2d, that the party injured was in the exercise of due and proper care, and that the injury was not the result of his own negligence and want of proper precaution.

It is said there is no evidence in the record, proving or tending to prove, either care or caution on the part of appellee's intestate, or wrongful act, neglect or default on the part of the company.

It is not, ordinarily, the province of this court to re-investigate questions of fact which have been submitted to the jury. The rule is, that where there is evidence from which the jury could properly find their verdict, it will not be disturbed, although the evidence might, in the opinion of the appellate court, justify a different construction. If there is a total failure of evidence, or if the verdict is manifestly against the weight of the evidence, it is the duty of the court to award a new trial and submit the cause to another jury. *Lowry* v. *Orr,* 1 Gilm. 70.

We have most carefully considered the entire evidence contained in the record, and we can not say there is a total failure of evidence to support the verdict, or that it is so manifestly against the weight of the evidence that an appellate court would, for that reason alone, award a new trial.

We can not doubt that Bennett was killed by a collision with the mail-catcher at Cliola station. It is true, there is no direct evidence as to the manner of his death, but we do not think we are left to mere conjecture as to the cause. The attending circumstances leave no rational doubt on the mind as to the cause of his death. No other plausible theory has been, or can be, suggested, consistently with the evidence. The evidence makes no other impression on our minds, and we doubt not that it made the same impression on the minds of the jury.

But it is insisted there is no evidence that the deceased was in the exercise of due care and caution at the time of the casualty. If it is meant that there is no direct testimony bearing on that question, it may be conceded. But are there no facts and circumstances in this case, illustrative of the conduct of the deceased, equally strong and convincing as would be direct testimony itself? The law only requires the highest proof of which the case is susceptible, or that can reasonably be made. It does not require impossible things. What would amount to sufficient proof in one case, might be deemed insufficient in another. It would be exceedingly difficult to lay down any rule of universal application, and each case must therefore rest upon its own facts and circumstances.

No one saw the fatal accident, in this instance, and consequently there was no one to detail the particulars. The lips of the party injured have been sealed in death, and at the fatal moment, the attention of his only companion was turned in another direction. The appellee has produced the only and the highest possible evidence of which the nature of the case would admit; but the evidence is not silent as to the manner of Bennett's death, or as to the degree of care used by him. There is evidence that enlightens both inquiries. It is true, the evidence is of a circumstantial character, but it is none the less convincing for that reason.

The accident occurred in the darkness of the night. There was nothing that could give Bennett any possible warning of the danger he was approaching. But a moment before, he was at his post in the discharge of his proper duties. It was shown that it was the duty of the fireman, when approaching such stations, to look out for signals. In looking for signals, the testimony shows it was customary and usual for the fireman to look out at the front window, and sometimes at the side window or gangway. The deceased was at his station on the left side of the locomotive, and on the side where the mail-catcher stood. The track made a slight curve before reaching the station, which obstructed the view to some extent, and

made it necessary for the fireman to look out at the side window or gangway, to observe whether any signals were given. We can not resist the conclusion, that the fatal collision occurred while Bennett was looking out of the side window or gangway for signals, in discharge of the necessary duties imposed upon him by his employment. Up to within a moment of the accident, he was shown to have been in the exercise of due care, and in his proper place, and it would do violence to the facts in the case to presume that in the instant that intervened he was guilty of negligence, in the absence of proof of any circumstances that even tend to establish the fact of negligence.

Ordinarily, when such accidents occur, there are living witnesses to detail the particulars. Undoubtedly the general rule is, that it must affirmatively appear that the injured party was in the exercise of due care and caution. This material fact may be made to appear by circumstantial, as well as by direct evidence. It is immaterial how the proof is made, so the fact is made to distinctly appear. In this case the evidence is circumstantial, and consists of facts and circumstances developed, and we can not say that the evidence is not sufficiently strong to warrant the conclusion that the deceased was in the exercise of due care and caution.

We now recur to the second proposition indicated, viz: does the evidence show any wrongful act, neglect or default, whereby to charge the company?

The act relied on to charge the company with negligence, was the dangerous proximity of the mail-catcher to the track. This was a material allegation in the declaration, and it was necessary that it should be supported by evidence, and if it has not been established by competent proof, under the well established rules of law the appellee's cause must fail.

The testimony of numerous railroad superintendents and other railroad men, shows most conclusively that the mail-catchers, when properly adjusted with reference to the track, are not ordinarily dangerous to the agents and servants of the

company operating the trains. The most that can be said of their testimony, when applied to the facts in this case, is, that it is only negative evidence of the safe character of the one that occasioned the injury to Bennett. The fact that they are not generally dangerous, by no means proves that the one in question was not dangerous. The opinions of these witnesses were certainly legitimate evidence to be considered, but were not of a conclusive character.

We understand that the mail-catchers are not permanent fixtures, and although of great weight, they may be readily moved nearer or more distant from the track. It can not be doubted that they may be placed so near the track as would make them a constant source of danger to the railroad operatives.

It is insisted by counsel, that no evidence appears in the record to show, or that even tends to show, that the mail-catcher at Cliola station stood in a dangerous proximity to the track. It is true, that no witness states in express terms it was dangerous, and it is also true that many witnesses give it as their professional opinion that it was entirely safe, with due care on the part of the operatives; but there are facts and circumstances in evidence from which its dangerous character may be inferred. Such evidence may have all the force of direct testimony to produce conviction. It distinctly appears, from uncontradicted evidence, that two men had been injured, one severely and the other slightly, prior to the happening of the injury to Bennett. Had every employee of the company expressed the opinion that the mail-catcher, in the position it occupied to the road, was not dangerous, it could not have changed the effect of such damaging facts, or relieved the impression produced on the mind, of its dangerous tendencies. Why is it that no accident ever occurred at any other station, or on any other road, from the use of such inventions? The conclusion is irresistible, and no process of reasoning can disabuse the mind of the conviction, that this one at Cliola station stood in a dangerous proximity to the road. The injuries

produced by it are too numerous to be accounted for upon any other hypothesis.

Another fact in the case strengthens that theory: It appears that immediately after the happening of the casualty, the mail-catcher at Cliola was moved back a distance of from four to six inches, and there is no evidence that any injury has since occurred. The officers of the company were notified of the injuries to their employees, at the date of their occurrence, and it is not an illogical conclusion that the company were guilty of gross negligence in not removing it to a safe distance at an earlier period. It was entirely practicable to do so, for there is no pretense that it has not performed its proper functions since its removal. The slightest precaution on the part of the officers of the company, after their attention had been called to its dangerous tendencies, would have prevented the occurrence of the fatal accident. In the absence of a high degree of care in that regard, the company must be held liable for the consequences.

If it be conceded that Bennett was guilty of negligence in leaning out from the gangway or the side window, his negligence in that regard was slight in comparison with that of the company in permitting the mail-catcher to stand so near the track, after notice had been given that it was dangerous to the railroad operatives. Railway companies have no right to erect machines, for any purpose, so near the track that the slightest indiscretion on the part of the employee will prove fatal. It is culpable negligence so to do. The railroad service, under the most rigid system of care, and with the most extraordinary vigilance, is full of incident and peril, and its hazards ought not to be unnecessarily increased.

It is assigned for error, that the court admitted improper evidence at the trial, on the part of the appellee. But a single error is pointed out. The objection taken, is a question propounded to the witness Gunther, and his answer thereto. The witness was the station agent at Cliola at the date the injury happened. The counsel for the appellee asked the

witness to state any knowledge or information that he had, from any source, as to any person being injured by the mail-catcher at that station, prior to the killing of Bennett, and in answer to the question the witness stated that the information he had received, was, that a man upon a baggage car, upon which he was riding, had his head out of the door of the baggage car, and that the mail-bag struck him on the head and knocked off his cap. He further stated that he did not know whether it was before or after the accident.

We can not perceive how the appellant was injured by the admission of the evidence, even if the ruling of the court was erroneous, inasmuch as the same facts were testified to by the witness Hughes, without objection. That witness was present at the time of the accident to the man in the baggage car, and no objection could have been successfully interposed to his evidence. Testimony to the same effect was also given by the witness Sadler.

The second and third assignments of error are of the same character, and will be considered together. They question the rulings of the court in giving and refusing instructions.

The first instruction given for the appellee, to which exceptions are taken, asserts the principle, that if the injured party was guilty of negligence, yet if his negligence was slight in comparison with that of the defendant, still the injured party would be entitled to a recovery. The principle sought to be announced is correct, according to the authority of the cases decided by this court. *The Galena & Chicago Union R. R. Co.* v. *Jacobs*, 20 Ill. 478; *The Chicago & Alton Railroad Co.* v. *Gretzner*, 46 Ill. 75.

The objection taken, rests on two grounds: 1st, that there was no evidence upon which such an instruction could be properly based, and for that reason it was calculated to mislead the jury on the facts involved; and 2d, that it was not qualified by including the doctrine as to negligence of fellow-servants in the same line of employment.

It is insisted by the counsel, that there is no evidence tending to show negligence on the part of the company, upon which this instruction could have been based, and although it may have stated a correct principle of law, yet, in its application to the facts, it was calculated to mislead the jury.

An instruction, based upon a hypothetical state of facts not found in the case, ought not to be given, for the reason that it would direct the attention of the jury to issues not involved, and would therefore be erroneous, although such an instruction might state accurately a correct abstract legal principle. We can not doubt there was sufficient evidence upon which to base this instruction, and that it was eminently proper in its application to the controverted facts.

We have before remarked, that there were facts and circumstances in evidence from which negligence might be inferred. There is the evidence, to which allusion has been made, of at least two witnesses, that the mail-catcher at Cliola station had been the cause of injuries to two persons prior to the killing of Bennett, of which the officers of the company had notice, and yet it does not appear that the company made any effort to remove it to a safe distance, or did anything to prevent future accidents. This was evidence tending to show the dangerous character of the mail-catcher, in its relation to the road, and from which the conclusion of gross carelessness on the part of the company, might be drawn. In addition thereto, and as strengthening the inference to be drawn from the other evidence, there was the fact that this structure did cause the death of Bennett. The nature of the injuries inflicted, indicate that if it had been removed only a few inches distant, the injury would have been avoided. All this evidence was before the jury for their consideration, and such an instruction could have had its just application.

The second objection indicated, is, that the instruction does not include the doctrine of negligence as between servants in the same line of employment.

The doctrine that a servant can not recover against the common master for an injury resulting from carelessness, or negligence of the other servant, in the same line of employment, if the company has used due diligence in the selection of competent agents and servants, has been fully established by the cases determined in this court. *Honner* v. *Illinois Central Railroad Co.* 15 Ill. 550 ; *Illinois Central Railroad Co.* v. *Cox,* 21 Ill. 24 ; *Chicago & Alton Railroad Co.* v. *Keefe,* 47 Ill. 108 ; *Chicago & Alton Railroad Co.* v. *Murphy,* 53 Ill. 336. It is believed that these cases are in harmony with a great majority of the English and American decisions.

The principles announced in these cases, were stated with sufficient accuracy in the instructions given for the company, and the question, whether Bennett was injured from the negligence of a fellow-servant in the same employment, was properly left to the jury.

The converse of the proposition stated in those cases, follows as a logical sequence, that one servant can recover from a common master for the negligence of a fellow-servant, *unless the latter is in the same line of employment.* This distinction was clearly taken, and exceptional cases stated in the *Chicago & Alton Railroad Co.* v. *Keefe, supra.* The other cases cited in this court are not inconsistent with this doctrine.

The company is bound to furnish its employees with safe machinery, and in the *Chicago & Alton Railroad Co.* v. *Shannon,* 43 Ill. 338, it was declared, that the company would be held to the highest diligence in that regard. In that case, the negligence relied on to charge the company, was in not furnishing a safe boiler, and the company was held responsible for the death of the fireman, in consequence of an explosion.

In the *Chicago & Northwestern Railroad Co.* v. *Swett,* 45 Ill. 197, it was held, that the company impliedly undertakes to furnish the agents and servants engaged in running the trains, with a safe road, machinery and cars, and their duty in that respect can not be avoided by delegating that duty to any number of agents. It is the imperative duty of the company to

see that the road and its appurtenant structures are in a safe condition. The case last cited holds that the doctrine, that an action will not lie by a servant against his principal for an injury sustained through the default of a fellow-servant, applies only to cases where the injury complained of occurs without the fault of the principal, either in the act which caused the injury, or the employment of the person who committed the injury.

We are not inclined to narrow the rule, or abridge the exceptional cases stated in the former decisions of this court.

We can not regard the injury complained of, as having been occasioned by the negligence of any servant of the company in the same line of employment with Bennett. The service was separate and distinct. It appears, the mail-catchers were placed on the road under the supervision of the agent of the postal department of the United States, and it was the duty of the company to see they were placed such a distance from the track as would render them entirely safe to the operatives of the road. The agents charged with that duty, had no possible connection with the running of the trains, in which service Bennett was engaged. The duties were as different and as distinct as those of a conductor and of a track repairer. There was, therefore, no error of the court in not modifying the instruction.

By the fourth instruction, the jury were told that the opinions of witnesses that the mail-catcher was not dangerous, were not conclusive, but that they might consider any other evidence in the case upon that subject.

. We do not think the objection taken to this instruction is tenable. The opinions of professional men and of experts, on the facts in a given case, are not always of a conclusive character. Such opinions are not to be lightly esteemed. They are proper and legitimate evidence to be considered in connection with the other evidence, and they may, and often do, tend to elucidate the true meaning of the case. Such evidence is often valuable, but it can not, in every instance, be regarded

as the most reliable and satisfactory. The *Chicago & Alton Railroad Co.* v. *Shannon, supra.*

The jury were not told they might disregard the evidence, but they were correctly told it was not conclusive, and they should consider the opinions of the witnesses in connection with the other evidence. Some of the witnesses who gave their opinion, had perhaps never seen the mail-catcher at Cliola station. They only spoke of them in general, and not of that particular one, and the jury were very properly told that such opinions were not conclusive of the facts in the case.

Two objections are taken to the seventh instruction given for the appellee: 1st, that it stated the jury might consider the fact that the alleged casualty happened in the darkness of the night, and 2d, that they might consider it was customary and usual for the firemen, in the discharge of their duties, to look out of the side window or gangway of the locomotive, for the purpose of discovering signals.

It is not controverted that the casualty did happen after dark, and we can not perceive what reasonable objection there could be in permitting the jury to consider every fact in evidence. The fact itself was not without its significance. It is in proof, that the mail-catcher could have been seen as far as any other obstruction, in daylight, and had it been light enough to see, that fact would have imposed a higher degree of care upon the deceased to have prevented the collision.

The second objection is equally untenable. The evidence shows it was customary and usual, with some firemen at least, when endeavoring to discover signals, to look out of the gangway or side window of the locomotive. The evidence was pertinent to show the manner in which such duties were usually performed, and to rebut any inference of negligence on the part of the deceased, in the performance of his duties. His duty required him to discover signals, if any were given, when approaching Cliola station, and it could hardly be expected of him, when in the performance of that duty to his employer, that his mind would be on that structure that stood in deadly

proximity to the track, when hidden from view by the darkness of the night.

In *Snow* v. *The Housatonic Railroad Co.* 8 Allen, 441, it was said, that "the question of due care in such case depends upon the manner in which the plaintiff performed the duty incumbent upon him—whether he acted with due skill and caution, and conducted himself in the usual and ordinary way in which similar acts are done, by persons engaged in like employment." It does not militate against this view of the case, that the deceased had knowledge that these structures were placed at the side of the track, all along the line of the road, when he entered upon the service of the company. So far as it is shown that he had any knowledge upon that subject, it is, that they were entirely safe, and it does not appear that he knew, or had any reason to believe, that the one at Cliola station was more dangerous than the others. He was not, therefore, required to use any higher degree of care when passing the Cliola station, than any other station where these structures were erected. In this view of the case, we can not doubt that it was proper for the jury to consider the usual and customary manner in which firemen performed their duties, and there was, therefore, no error in the court in giving the instruction.

The second instruction asked by the appellant, which the court refused, states a correct principle of law, on the authority of the *Illinois Central Railroad Co.* v. *Cox, supra.* The refusal of the court to give this instruction would doubtless have been error, had not the court given the same principle in another instruction. The instructions given at the request of the appellant, state the rule quite as broadly and liberally as it is stated in the refused one, and the company was in nowise prejudiced by the refusal.

After a most careful consideration, we can perceive no substantial error in the record. The instructions given seem to have been prepared with unusual care and exactness. They were such as the nature of the case required, and were calculated to enlighten the minds of the jury on the true issues

involved. There is evidence tending to support the verdict, which was fully considered by the jury. We do not say the evidence would bear no other construction than that given to it, but we are very clearly of opinion that it is not a case that ought to have been withdrawn from the consideration of a jury.

There are some facts appearing in the record that can hardly be reconciled, consistently with the exercise of due care and vigilance on the part of the company. It most satisfactorily appears, that, in general, those inventions for the delivery of the mails are not dangerous to the operatives of the road. They have been, and can be, placed at a distance from the track, that would be entirely safe, and still perform their proper functions. If such was not the case, it would be the duty of the company to abandon their use. There is evidence tending to show that the one at Cliola station was dangerous; that it had produced one or more injuries; and there is also evidence tending to show that the company had knowledge of that fact, in ample time to have removed it to a safe distance, so as to have prevented the death of Bennett. The significant fact appears, and no reasoning, however ingenious, can destroy its force, that after its removal, for only a distance of a few inches, it was, and has been, perfectly safe, and no accident has since occurred from its continued use.

The rule is too well established to be now departed from, that where a case presents a contrariety of evidence, and the jury have been properly instructed on the law applicable to the facts, the verdict will be regarded as settling conclusively the controverted facts. This case affords no sufficient ground for a departure from that rule.

Upon the whole case, as presented to us, we are of opinion that the judgment of the circuit court must be affirmed.

*Judgment affirmed.*

Mr. Justice Breese: I do not concur in the reasoning or conclusions of this opinion.

Mr. Justice Thornton: I do not concur.