| 97 | 131 |
|----|-----|
| 106 | 603 |
| 97 | 131 |
| 115 | ²619 |

## Illinois Central Railroad Co. v. H. J. Jones, Adm'r, etc.

1. FELLOW-SERVANTS—*Switch Crews Who Are Not.*—Switch crews belonging to different trains of the same railroad company, where the evidence fails to show the existence of that habitual association which may exercise a mutual influence promotive of proper caution among servants of a common master, can not be regarded as fellow-servants within the meaning of the term.

2. SAME—*When a Question of Fact and When of Law.*—Whether or not, under given circumstances, different servants of a common master are fellow-servants within the legal signification of the term, is a question of fact for the determination of a jury, except where, upon conceded facts or conclusive or uncontradicted evidence, the court can say that all reasonably intelligent minds must arrive at the same conclusion, when the question becomes one of law. But if different minds may honestly draw different conclusions from the proved facts and legitimate inferences to be drawn from them, the case is to be submitted to the jury for their determination as a question of fact.

3. INSTRUCTIONS—*Duty of the Court as to the Law of Fellow-Servants.*—It is the duty of the court to define, and instruct the jury as to what, in law, constitutes the relationship of fellow-servants; but whether the circumstances of a given case fall within such rules of law is a question of fact, unless where the proved or conceded facts are so clear as to make the question one of law only.

4. ORDINARY CARE—*No Recovery Without.*—Where a person injured by a railroad is not, at the time, in the exercise of due care and caution, he is, in the eye of the law, guilty of negligence, and if that negligence contributed to his injury he can not recover.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Madison County; the Hon. TRUMAN E. AMES, Judge,

presiding. Heard in this court at the August term, 1900. Reversed and remanded. Opinion filed September 4, 1901.

WILLIAM H. GREEN, attorney for appellant; J. M. DICKINSON, of counsel.

W. F. BUNDY and FRANK F. NOLEMAN, attorneys for appellee.

OPINION PER CURIAM.

In this case a petition for rehearing has been duly presented. We have given the petition attention, considered the suggestions therein made, adhere to the conclusion that the case should be reversed and remanded, and therefore deny the prayer of the petition; but we modify the opinion, which, as modified, is as follows:

Appellee commenced this action to recover damages for causing the death of his intestate, John F. Jones, by the claimed negligence of appellant.

Deceased, John F. Jones, was in the employ of appellant as brakeman on a freight train; his run was from Centralia through Carbondale to Carterville and return. He had been in the service of appellant for two years prior to the time of the accident. At the same time appellant had another freight train which ran from East St. Louis through Carbondale to Mounds and return.

At Carbondale there is a switchyard, and it was in this yard that Jones was killed. Appellant's road through Carbondale is double tracked, the west track being as a rule used by south bound trains and the east track by north bound trains. At Carbondale two branches turn off the main line; one runs east and south to Carterville; the other runs west and north to East St. Louis; Mounds is south of Carbondale on the main line. The only point where these two trains could meet was at Carbondale, and this would happen sometimes twice or three times a week, and at other times not for an entire week. The meetings were not at all regular, but apparently were accidental. The crews of the two freight trains did switching in the yards at Carbondale, setting out cars in the yard, and taking cars from

the yard. To what extent these crews actually co-operated in the discharge of their duties, the evidence is uncertain, though it tends to prove that each crew did its own work without co-operation of the other.

On March 16, 1899, the Carterville crew arrived in the Carbondale switchyard at 11 o'clock P. M. They left their train on the "Y" which connects the Carterville branch with the main line; cutting off the engine and heading north, they took the main west track and started backing slowly toward the depot, which was located a considerable distance to the south, on the main track. The entire crew of the Carterville run, consisting of engineer, fireman, conductor and two brakemen (of whom Jones was one) were riding on the engine. The purpose of running down on the west main track was to get some way-bills at the freight house (where located the evidence fails to show) and to pick up some freight cars. The engineer was riding on the east side of the cab and deceased was riding on the west side.

While in the act of backing down, the engineer noticed another engine to the east of him, also heading north, but standing still. The evidence leaves it uncertain whether deceased knew this engine was in the yards.

The Carterville crew kept backing south very slowly, until they reached a point 1,500 feet north of the depot, where they came to a standstill. Just before the engine stopped the conductor of the Carterville train jumped from the engine and started east across the east main track to look up the freight cars that he was after and which he supposed were standing on the switch tracks east of the main tracks. Deceased, though not requested by the conductor, also jumped from the engine and followed him. He jumped from the deck of the engine without using the step in his descent, and at once started toward the east main track. As soon as he reached the east main track, he was knocked down and killed by the other engine with four box cars attached. This engine had started up and was at the same time backing south on the east main track, running at a

speed variously estimated at from six to fifteen miles an hour, overtaking the slower Carterville train, so that just prior to the accident both trains were backing south on the east and west main tracks respectively.  The point where Jones was killed, was just east of where the Carterville engine came to a standstill, about 1,500 feet north of the depot, and about 500 feet north of the nearest north street crossing of the city of Carbondale.

The evidence warrants a finding that the switchyard at the point of the accident is within the corporate limits of the city; there is an ordinance in force in that city, limiting the speed of freight trains to six miles per hour. The train which committed the injury was in charge of the East St. Louis crew, and their testimony shows that the " back up" signal was given twice before the accident, each signal consisting of three sharp sounds of the whistle. In addition, two brakemen, with lanterns in their hands, were stationed on the south end of the backing train.  The engineer on the Carterville engine seems not to have been aware of the immediate presence of the East St. Louis train until the end of the backing cars appeared within the range of the headlight of his engine.   There are two counts in the declaration; the first count alleges negligence in the management of the train which caused the death of deceased in that it was propelled backward at a high and dangerous rate of speed; and the second alleges the negligence to have been that the defendant ran its train at a greater rate of speed than was permitted by the ordinance of the city of Carbondale.   The trial resulted in a verdict for appellee in the sum of $3,000.   At the close of plaintiff's evidence in chief, appellant moved the court to instruct the jury to find for the defendant, which was overruled, and the motion was renewed at the close of all the evidence, when it was again overruled by the court and proper exceptions were taken.   The court rendered judgment on the verdict, after having overruled appellant's motion for a new trial.

The principal grounds urged for reversal of the judgment

are, that the crews of the two trains were fellow-servants; that the court erred in giving certain instructions on behalf of appellee; that deceased was himself guilty of negligence which contributed to the injury which caused his death, and the refusal of the Circuit Court to grant a new trial.

Were deceased and the members of the crew which controlled the East St. Louis train fellow-servants?

Each crew seemed to have been engaged in its own particular duties in the running of the respective trains. The evidence fails to show the existence of that " habitual association which may exercise a mutual influence promotive of proper caution " among servants of a common master.

Mr. Justice Shepard, in Chicago City Ry. Co. v. Leach, 80 Ill. App. 363, says:

" But whether or not, under given circumstances, different servants of a common master are fellow-servants, within the legal signification of that term, is well settled in Illinois to be a question of fact for the jury, except where, upon conceded facts or conclusive or uncontradicted evidence, the court may say that all reasonably intelligent minds must arrive at the same conclusion, when in such cases the question would become one of law.   If different minds may honestly draw different conclusions from the proved facts and legitimate inferences to be drawn therefrom, a case exists for the jury to act upon.

It is the duty of the court to define and instruct the jury as to what, in law, constitutes the relationship of fellow-servants, but whether the circumstances of a given case fall within the rule of law so laid down is a question of fact for the jury, unless where, as above said, the proved or conceded facts are so clear as to make the question one of law only."

This seems to be an accurate statement of the law in relation to the question of fellow-servants; the Supreme Court has often enunciated the same rule in reference to the same matter.   Deceased was certainly not co-operating with the East St. Louis crew · in any particular business which they then had in hand, so as to bring him within the first branch of the fellow-servant rule, and we have already stated that there is no evidence in the record of such deci-

sive character as to bring him under the second branch of the same rule.

The only instruction given on behalf of appellee, except one in the usual form as to the measure of damages, was as follows:

"The court instructs the jury that if you believe from the evidence in this case that railroad companies were by an ordinance of the city of Carbondale, at the time of the injury in question, prohibited from running or propelling any freight train or cars within the corporate limits of said city at a greater rate of speed than six miles per hour; and if you further believe from the evidence that John F. Jones, the deceased, on the night in question was in the employ of the defendant as a brakeman; that he, the said Jones, while in the discharge of his duties as brakeman, and in the line of his employment, attempted to cross over one of defendant's tracks, within the corporate limits of the said city of Carbondale, and that he was using due care and caution for his own personal safety immediately before and while attempting to cross over said tracks; and if you further believe from the evidence that the said John F. Jones and Engineer Dunn were not fellow-servants; and if you believe from the evidence that the said defendant carelessly and negligently ran and propelled certain freight cars attached to a locomotive engine along and upon said track at a high and dangerous rate of speed, and in excess of six miles an hour, whereby the said John F. Jones, while attempting to cross said track, was suddenly and violently struck by one of said cars and knocked down, run over and killed, as charged in the plaintiff's declaration; then you should find the defendant guilty."

When this instruction is considered in the light of the issues made by the pleadings and of the evidence, we think it does not contain error prejudicial to appellant.

The more serious and perplexing question in this case is as to the care and diligence exercised by deceased for his own safety. The law upon that question, as applicable to facts such as appear in the case at bar, is quite fully laid down in I. C. R. R. Co. v. Batson, 81 Ill. App. 142, in which we say:

"Two basic propositions are asserted by the declaration and denied by the pleas. First, that the deceased, at the

time of the accident, ' was in the exercise of due care and caution for his own safety; second, that the defendant was guilty of negligence causing the death of the deceased.    As wanton negligence is not charged, and as the doctrine of comparative negligence is not now applied in this State, if the first proposition is not sustained by the evidence, the second proposition need not be considered.

If deceased was not in the exercise of due care and caution, he was, in the eye of the law, guilty of negligence; and if that negligence contributed to his death, appellee can not recover in this action.    Lake Shore & M. S. R. R. Co. v. Hessions, 150 Ill. 546.

' To entitle plaintiff to recover in this kind of an action, he must have been in the exercise of ordinary care at the time of receiving the injury.    He could not be in the exercise of ordinary care and at the same time guilty of negligence that contributed to the accident.    The injury must be attributed to the defendant's negligence and to that alone.'    C. & A. R. R. Co. v. Kelly, 75 Ill. App. 493; Chicago City Ry. Co. v. Fennimore, 78 Ill. App. 479.

It devolved upon appellee to prove by a preponderance of the evidence that at the time of, and immediately preceding the accident, the deceased was in the exercise of ordinary care.    C., B. & Q. R. R. Co. v. Gregory, 58 Ill. 272; C., B. & Q. R. R. Co. v. Warner, 108 Ill. 553; North C. St. Ry. Co. v. Louis, 138 Ill. 11; I. C. R. R. Co. v. Nowicki, 148 Ill. 29.

It is said in West Chicago St. Ry. Co. v. Manning, 170 Ill. 427:

' What is ordinary care depends upon the circumstances of the particular instance.    When the circumstances are such that an ordinarily careful and prudent person would deem it essential to exercise a greater degree of care and caution than upon less threatening circumstances, such greater degree of care would be ordinary care.'

One must act under all circumstances as a reasonably prudent person would act, which is denominated reasonable or ordinary care.    C. W. & V. Coal Co. v. Peterson, 39 Ill. App. 118.

Keeping in mind these propositions of law, does the evidence show that the deceased exercised ordinary care ?    This is not a case where no witnesses saw the accident, and where the circumstances and actions of the deceased are unknown. If it was, proof of his character as a cautious and prudent man would be admissible and might warrant the presump-

tion that he acted with due care and caution. But if there were witnesses who saw the accident and who testify to the actions of the deceased at the time, and to the circumstances and environment preceding it, such proof would not be admissible. I. C. R. R. Co. v. Ashline, 171 Ill. 312; C., R. I. & P. R. R. Co. v. Clark, 108 Ill. 117.

It follows, then, that we must look to the evidence in the case, as given by those who saw the accident and are familiar with all the conditions, to see if it affirmatively appears that the deceased was in the exercise of ordinary care."

While the law is, if there is any substantial evidence, or reasonable inference deducible from the evidence, tending to support all the issues necessary to a recovery, the trial court should submit the case to a jury, yet the law also is, where the verdict is palpably against the weight of the evidence it should be set aside. In Belden v. Innis, 84 Ill. 78, the court says:

" It is the duty of every judge of the Circuit Court to give careful attention to every part of the testimony in each case and to consider it with as much care as if the case were tried by the court without a jury. And in all cases where the verdict is manifestly and palpably against the weight of the evidence, the judge of the Circuit Court should promptly take the responsibility of setting aside the verdict."

In St. Paul F. & M. Ins. Co. v. Johnson, 77 Ill. 598, the court says:

" We are of opinion the verdict was clearly against the weight of evidence and should be set aside on that ground. The judgment will be reversed and the cause remanded."

Where a verdict is palpably against the weight of the evidence and the trial judge refuses to set it aside, such is error, and it is the duty of the Appellate or Supreme Court, as the case may be, to reverse and remand for such error. C., R. I. & P. R. R. Co. v. Herring, 57 Ill. 59; Wade v. Atkins et al., 58 Ill. 64; Peaslee v. Glass, 61 Ill. 94; Lincoln v. Stowell, 62 Ill. 84; Davenport et al. v. Springer et al., 63 Ill. 276; C., B. & Q. R. R. Co. v. Stumps, 69 Ill. 409.

While we do not agree with counsel for appellant that there is absolutely no evidence tending to establish the

necessary averment in appellee's declaration, that deceased was, at the time and on the occasion of the injury complained of, in the exercise of due care and caution for his own safety, still, considering the evidence in this case in the light of the law as we understand it and have heretofore laid it down in I. C. R. R. Co. v. Batson, herein quoted from, the case, to our minds, clearly falls within the class of cases above cited and under the rule therein laid down and adhered to.

The Circuit Court should have granted a new trial, and for this error the case is reversed and remanded.