## H. J. Jones, Adm'r, v. Illinois Central R. R. Co.

1. BILL OF EXCEPTIONS—*Is a Pleading.*—A bill of exceptions is to
be taken as a pleading of the party presenting it. If liable to the
charge of ambiguity, uncertainty, or omission, it ought, like any other
pleading, to be considered most strongly against the party who pre-
pared it.

2. DUE CARE—*Burden of Proof is upon Plaintiff to Prove.*—To
recover for injuries alleged to have been caused by the negligence of a
defendant, it is necessary that the plaintiff shall allege in the declara-
tion and prove on the trial, that plaintiff was exercising due care.

3. JUDGMENTS—*For Costs Against an Administrator.*—No execution
can issue against an administrator, where he sues as such in his represen-
tative capacity, and a judgment for costs against him should be for
costs to be paid in due course of administration.

Trespass on the Case.—Death by negligent act. Appeal from the
Circuit Court of Marion County; the Hon. SAMUEL L. DWIGHT, Judge
presiding. Heard in this court at the August term, 1902. Affirmed.
Opinion filed March 2, 1903.

This is an action by the administrator of John F. Jones,

to recover damages for his death alleged to have been caused by the negligence of appellee.

The declaration contains two counts.

The first count charges negligence by the defendant in running its engine and train of cars within the corporate limits of the city of Carbondale at a high and dangerous rate of speed.

The second count alleges an ordinance of the city of Carbondale limiting the rate of speed of freight trains to not more than six miles an hour, and charges negligence by reason of the violation of the same by the defendant, and the consequent injury and death of the decedent.

The general issue was pleaded by the defendant, trial was had before a jury, and verdict rendered in favor of the defendant and against the plaintiff for costs. Motion for a new trial was made by plaintiff and overruled by the court, and judgment entered on the verdict, to which several rulings the plaintiff duly excepted and brings the record to this court for review by appeal.

This is the third trial of this cause. The first trial was at the September term, 1899, of the Marion County Circuit Court, resulting in a verdict for plaintiff for $3,000. The defendant appealed to this court and the judgment was reversed and the cause remanded to the Circuit Court. Illinois Central R. R. Co. v. Jones, Adm'r, 97 Ill. App. 131.

At the January term, 1902, of the said court, another trial was had resulting in a verdict in favor of the plaintiff for $2,500, which verdict, on motion of defendant, was set aside and a new trial granted. At the April term, 1902, of the said court, another trial was had, resulting in a verdict for defendant.

The errors urged and assigned in this record are confined to alleged erroneous instructions given on the part of the defendant, and to the form of the judgment and execution.

No other questions are sought to be raised.

F. F. NOLEMAN and W. F. BUNDY, attorneys for appellant.

W. W. BARR, attorney for appellee; J. M. DICKINSON, of counsel.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The bill of exceptions does not purport to detail the evidence, but is in the nature of a common law bill of exceptions. It is signed by the trial judge, and is thus made a judicial record of what the evidence introduced by each of the parties tended to prove.

Appellant in his printed statement says:

"The record as prepared shows what the evidence tended to prove, instead of setting the evidence out in full. The bill of exceptions states that the evidence tended to prove that the decedent, John F. Jones, was at the time of his death, and had been for some time previous, in the employ of the defendant as a brakeman; that the crew of which he was a member, operated between Centralia and Carterville, Illinois, the run being known as the Carterville run; leaving Centralia, the crew would go south on the defendant's main line to Carbondale and there leave the main line eastward for Carterville, being then in what is known as the St. Louis division; that the crew in charge of the engine and cars that struck the said John F. Jones and killed him, operated from East St. Louis to Mounds, Illinois; leaving St. Louis they would strike the main line at Carterville, and returning from Mounds going to East St. Louis they would leave the main line at Carbondale; that the two crews above mentioned met at Carbondale only occasionally and at irregular intervals; that the decedent and the members of the crew which struck him were not fellow-servants; that there was an ordinance in force in the city of Carbondale at the time of the accident, prohibiting the running of freight trains or freight cars at a rate of speed greater than six miles per hour, within the corporate limits of the city of Carbondale; that the crew of which the decedent was a member started from the north part of the Carbondale yards south on the east main track, there being a double track at that point, running slow going down to the station, which was several hundred feet south of where the road from Carterville strikes the main line; that the said crew had proceeded southward some distance, when they came to a train standing on the same track, and could proceed no further; that the conductor of the said crew started across eastward into the yard to pick out some air cars and get their numbers, for the purpose, later on, of getting them to put in his train, remarking as he left the

cab of the engine, that he was going across for that purpose; that the decedent was in hearing distance of that remark; that the decedent jumped from the deck of the engine to the ground, and started to follow his conductor; that just as the decedent jumped, his engineer discovered the other engine and cars coming, and warned the decedent of the same, but it was too late, and the decedent was struck by the cars and the engine and instantly killed; that the engine and cars which struck the decedent was a freight engine and four freight cars, the engine backing south and pushing the cars, and that they were running at a rate of speed of fifteen miles per hour; that no bell was rung or whistle sounded, and that no lights were upon the rear of the backing train; that it was customary for the brakeman to go along with the conductor to help him get out air cars; that when the decedent heard the engineer's warning of the approaching train, he had already started to jump from the engine, and was too far gone to stop; that the engine and cars which struck the decedent were going south over the north-bound track; that the decedent was twenty-seven years of age, and had an earning capacity of seventy to eighty dollars per month; that he was unmarried and contributed to the support of his mother; that the night in question was dark, the accident happening at about eleven o'clock P. M., on the 16th day of March, A. D. 1899."

. The evidence offered and introduced by the plaintiff tended to prove the issues on behalf of the plaintiff.

The defendant's testimony tended to prove, as is shown by the bill of exceptions, that the train in question was running not faster than six or eight miles an hour; that the bell was ringing on the engine at the time, and that the whistle on the engine had sounded on two occasions after starting south to place where accident occurred; that there were two brakemen on top of the cars that struck the decedent, both of whom had white lights burning at the time; that one of them gave a shrill whistle to warn decedent, and the other hallooed as he saw decedent's light appear from the engine from which he was jumping; that the decedent was not asked by his conductor to help him hunt up air cars, and was not needed; that it was the conductor's business; that the decedent could have seen the approaching cars if he had looked north immediately before

Jones v. I. C. R. R. Co.

he jumped; that the decedent was familiar with tracks and yards of defendant, and knew the custom of all train crews in making up there; that it was proper for the Dunn crew to so use the north-bound track.

The bill of exceptions states that the evidence tended to prove on the part of the plaintiff that the decedent and Engineer Dunn were not fellow-servants, and that it tended to prove on the part of the defendant that they were fellow-servants.

And it also states that the evidence tended to prove no other material facts, and was conflicting.

A bill of exceptions is to be taken as a pleading of the party presenting it.

" If liable to the charge of ambiguity, uncertainty, or omission, it ought, like any other pleading, to be considered most strongly against the party who prepared it. The appellant must be responsible for all uncertainty and omissions in his bill of exceptions. * * * Rogers v. Hall, 3 Scam. 5; Brown v. Griffin, 40 Ill. App. 558; Wright v. Smith, 82 Ill. 527; Giddings v. McCumber, 51 Ill. App. 373; Baker v. Newbury, 63 Ill. App. 405.

The bill of exceptions in the present case does not detail the testimony. It alleges that evidence was offered tending to prove certain facts, specifying what these facts are.

Applying the rule as laid down in these decisions, it is assumed that appellant has stated in his bill of exceptions, everything that the evidence tended to prove which was material to sustain his case. If there is no averment that there was evidence tending to prove a certain allegation, the presumption is that there was no evidence tending to prove that allegation. This court can not presume that there was evidence tending to prove an allegation, in the absence of such evidence itself, and in the absence, also, of an averment that there was such evidence.

Appellee alleged in his declaration that the deceased was using due care and caution. This was a material allegation, necessary to be proved.

It is said in I. & St. L. R. R. Co. v. Evans, 88 Ill. 64:

" To recover for injuries alleged to have been caused by

the negligence of defendant, it is necessary that plaintiff shall allege in the declaration and prove on the trial, that plaintiff was exercising due care."

That the burden of proof is on the plaintiff to make this proof has been repeatedly held. N. Chi. St. Ry. Co. v. Louis, 138 Ill. 11; Kepperly v. Ramsden, 83 Ill. 354; C., B. & Q. R. R. Co. v. Levy, 160 Ill. 385; Ibid. v. Gregory, 58 Ill. 272; Ibid. v. Warner, 108 Ill. 553; Illinois Central R. R. Co. v. Batson, 81 Ill. App. 147.

There is no allegation in the declaration of wanton or willful negligence. The concluding sentence of the bill is " the evidence tended to prove no other material facts, and was conflicting."

If, then, the bill of exceptions does not aver that there is evidence tending to prove due care and caution, or tending to prove facts from which due care and caution can be reasonably inferred, there is no case presented upon which a judgment for plaintiff could be sustained, if everything was conclusively proved which the bill of exceptions avers there was evidence tending to prove.

An inspection of the bill shows no averment that there was any evidence introduced by plaintiff tending to prove that the deceased was using due care and caution. Nor does it aver that there was evidence tending to prove facts from which due care and caution can be reasonably inferred. On the contrary, it does aver that there was evidence tending to prove facts which, when considered, indicate contributory negligence.

The deceased was on the engine. Just as he was in the act of jumping to the ground, the engineer called to him that there was a train coming, but too late to stop him. If the engineer could see the train, why could not the deceased have seen it? There is no reason apparent from anything the evidence tends to prove, that prevented, or tended to prevent him from looking.

It is also averred that defendant introduced evidence tending to prove " that deceased could have seen the approaching train if he had looked north immediately

before he jumped out in the darkness in front of the approaching train."

It is true that there is a general statement that " the evidence offered and introduced by the plaintiff tended to prove the issues in behalf of the plaintiff." But this general statement follows and concludes the statement of specific matters which the evidence did tend to prove.

It is a legal maxim that " the statement of one thing is the exclusion of another." Anderson's Law Dictionary, p. 436.

The specific averments of what the evidence did tend to prove, limit the general statement that " the evidence tended to prove the issues in behalf of the plaintiff." They limit the statement to such issues as there were specific averments of evidence tending to prove.

We conclude, then, both from the omission in the bill of exceptions to aver that there was evidence tending to prove that the deceased was using due care and caution, and also from the recital of matters indicating contributory negligence, which it averred that the evidence does tend to prove, that there is no basis of recovery which the evidence tended to prove, upon which a judgment for appellant could be sustained. This appeal reviews the third trial of this cause by the Circuit Court. The first trial resulted in a verdict for plaintiff which, upon appeal, was reversed and the case remanded. 97 Ill. App. 131.

At the next trial, a verdict was had for plaintiff, which upon motion of defendant was set aside and a new trial granted. At the third trial, a verdict was rendered for defendant from which is this appeal by plaintiff. It is fair to conclude that after this experience, plaintiff has presented all the testimony that bears favorably for his side of the case. It is fair also to conclude that the bill of exceptions has gone as far as the testimony warrants, in stating what the evidence tends to prove in support of the material allegations of the declaration. If, then, there is no averment that the evidence tends to prove a certain material allegation, or to prove facts from which a court

can reasonably infer that such allegation was proved, it is not reversible error, although some instructions do not state the law correctly.

We think there is error in instructions given for appellee, but this error does not excuse an omission on the part of appellant to prove a material fact, or warrant a reviewing court in awarding a new trial, when the bill of exceptions, taken most strongly against the pleader, does not show a *prima facie* cause of action.

Appellant assigns for error that "the court erred in ordering execution on the judgment." The abstract does not show that any execution was ordered. A reference to the record, however, shows that judgment for costs was rendered against plaintiff and that an execution was ordered. In this there was error. The suit being brought by an administrator, the judgment should have been for costs to be paid in due course of administration. There is nothing to indicate that the attention of the court was at any time called to this formal error. Under Sec. 81, Chap. 110, Hurd's Statutes, this court has power to render final judgment. The form of the judgment will be modified in the respect indicated, and will in all things else be affirmed.

It is therefore ordered and adjudged by this court, that the appellee, the Illinois Central R. R. Co., have and recover, of and from appellant, H. J. Jones, as administrator of the estate of John F. Jones, deceased, all the costs and charges by said appellee in this behalf expended, to be paid by said appellant in due course of administration of said estate. And that this judgment be duly entered upon the records of this court. It is further ordered that the clerk of this court certify a copy of this judgment to the clerk of the Circuit Court of Marion County.

The judgment of the Circuit Court, as modified herein, is affirmed.