Henson S. Simpson, et al., v. Osman N. and E. A. Danielson, Partners, etc.

Gen. No. 4,418.

1. Evidence—*when admission of, not error.* Notwithstanding evidence admitted may have been improper, yet the error in the admission is harmless if the fact which such evidence tends to prove was fully established by other competent evidence.

Action commenced before justice of the peace. Error to the County Court of LaSalle County; the Hon. WILLIAM H. HINEBAUGH, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 8, 1905.

J. J. HANNA and M. N. ARMSTRONG, for plaintiffs in error.

BROWN & WILEY, for defendants in error.

MR. JUSTICE VICKERS delivered the opinion of the court.

Plaintiffs in error were engaged in the manufacture and sale of the Acme Stock Food, under the partnership name of the Acme Food Company. Their place of business was 170 E. Madison street, Chicago. The Acme Stock Food is a preparation made as a food for domestic animals. The method adopted by plaintiffs in error to place their product on the market was to send agents into the country to contract sales to local merchants. Danielson Bros. were engaged in the hardware and implement business and had a store at Leland, LaSalle County, Illinois.

On August 4, 1898, Mr. Simpson, a member of the firm of plaintiffs in error, called on defendants in error and the following written contract was executed:

"August 4, 1898, Leland, Illinois. Acme Food Company, 170 E. Madison St., Chicago, Ill. Please ship to Danielson Bros. at Leland, Ill., C. B. & Q. Ry., Acme Food as follows, F. O. B. Chicago.

| | |
|---|---|
| 200 lbs. in 25 lb. pails, at 9c.............. | $18 00 |
| 100 lbs. in 50 lb. quarter bbls. at 9c....... | 9 00 |
| 200 lbs. in 200 lb. bbls. at 9c............. | 18 00 |
| Total................................. | $45 00 |

Ninety days after date we promise to pay Acme Food Co. or order Forty-five no-100 dollars at Chicago, Illinois, with interest after maturity until paid. We agree each week to mail to said Acme Food Co. a report of all orders taken for said food during said week.

DANIELSON BROS.
H. S. S., Agent.

We, the undersigned, agree with the party or parties executing above order, as follows: You are expected and

instructed to sell said Acme Food strictly on its merits, and to warrant and guaranty said food to each customer, if used and fed according to printed instructions. And we agree in all cases where your customers have fed the food as aforesaid, and furnish us with their affidavit on the printed form printed by us, to ship to you free of charge, f. o. b. on cars at your station, as many pounds, not exceeding 500 pounds to a single customer, as shall appear by said affidavit to have been used by such customer. It is understood that this warranty shall cover in each case only the first sale made to each individual customer. All blank spaces in said affidavit must be filled in in ink before the same is executed and the party executing same must clearly and explicitly state that he has fed said feed, in accordance with our instructions, detail the manner of feeding same, and that his stock has derived no benefit therefrom, otherwise this warranty is of no force or effect.

No agreement recognized unless in writing on this sheet.

ACME FOOD CO.<br>Sole Mfrs. of Acme Food,<br>170 E. Madison St., Chicago, Ill."

It appears from the evidence that five other orders similar in form, but for different quantities of the food, were given, and that the aggregate of all the orders is $225, and that defendants in error have been credited with payments made at different times aggregating $166.50, leaving a balance on the face of the books of $58.50, which with interest constitutes the claim sued for.

This action was commenced before a justice of the peace, and appealed to the County Court where defendants in error had a verdict and a judgment, to reverse which this writ of error is sued out by plaintiffs below.

The stock food was put up by plaintiffs in error in 25, 50 and 100 pound packages, on each of which was the following:

"*Guaranty.* The Acme Food Company, of 170 E. Madison St., Chicago, instructs all dealers to sell Acme Food strictly upon its merits, and to guaranty said food to each customer, and to agree with each customer where they have fed said Acme Food for not less than thirty days daily according to printed directions for feeding said class of stock feed, and by making affidavit on printed form fur-

nished by us that his stock derived no benefit from said food, to refund them money paid for said food. Acme Food Co., Sole Manufacturers, 170 E. Madison St., Chicago, Illinois."

At the time the $45 order was executed Mr. Simpson and O. M. Danielson, one of defendants in error, went out among the farmers to introduce the Acme Stock Food. They called on a large number of farmers and left with some 25 lbs., others 50 lbs., some 100 and as much as 200 lbs., with some farmers and feeders—in all about 600 lbs. They traveled together in a vehicle and delivered the food to the farmers at the time.

The evidence shows that in each instance when a quantity of food was delivered that Mr Simpson told the farmer that he wanted him to take the food and try it and if it did not prove beneficial as represented, he would not be required to pay anything for it.

It is further shown that a large number of farmers did use the Acme Food as directed, and they testify that it was of no value, and they, relying on Mr. Simpson's statements, refused to pay for it. The Stock Food delivered by Mr. Simpson on this occasion came from the store of defendants in error, and is a part of the goods for which this suit is brought.

It also appears that an agent of plaintiffs in error by the name of Tee, at other times canvassed among the farmers with one of defendants in error and made similar deliveries, giving substantially the same guaranty, and that other deliveries were made by defendants in error with a similar guaranty to the farmer, and that in many cases the farmers refused to pay for it, because it proved unsatisfactory, and did not fill the guaranty.

The total amount thus lost to defendants in error more than equals the amount of the claim of plaintiffs in error. The weight of the evidence shows that defendants in error made requests for the blank affidavits to be filled by the complaining customers, and that two such blanks were furnished, one of which was filled out and delivered to the

agent of plaintiffs in error, the other rendered useless in an attempt to fill it out. No other affidavits were furnished, although requested by defendants in error, and no additional food was furnished to replace that used by the farmer who made the affidavit, nor was any credit otherwise given defendants in error on the account for any part of the food used, and not paid for by the farmers.

The trial court permitted defendants in error to prove the express warranty made by Mr. Simpson to the various farmers by means of which the several conditional sales were made, and also instructed the jury, in substance, that if the sales were made to the farmers under the circumstances hereinbefore set out, and that the farmers refused to pay for said food, on the grounds that the same was not as warranted, then defendants in error would be entitled to a credit for such sums as were lost to defendants in error in this way. These rulings are assigned as error. Plaintiffs in error invoke the well-established rule of law that all conversations and statements antecedent to and at the time of making a written contract are merged in the writing, and that parol evidence is not admissible to alter or vary the terms of a written instrument. In the view we take of this case, the rule above stated has no application. The written order of defendants in error upon which the goods were shipped, constitutes the contract between plaintiffs in error and defendants in error, but the conversation and statement by Mr. Simpson and his agent, Tee, with the farmers at the several times when the stock food was delivered, constituted the agreement with the consumers. Mr. Simpson took the food out of the store of the defendants in error, went out and sold it, or left it on trial with feeders, with a distinct understanding that it was not to be paid for unless it proved to be as represented. The evidence fails to show that anything was said to these farmers and feeders about the necessity of making an affidavit; they were told simply they would not be required to pay for the food if it failed to benefit their live stock. It failed, so they testify, and hence there is a complete defense against all lia-

bility for the food consumed.   Even though the contract between the parties to the suit contained a condition requiring an affidavit from the farmers before plaintiffs in error would be required to supply other food to replace what had been used by the farmer, still, when plaintiffs in error went out in person, or with their agent, and made sales to farmers, giving a general and unconditional warranty, there was clearly a waiver of the clause of the contract requiring an affidavit, so far at least as these particular sales are concerned, and plaintiffs in error would be estopped from denying credit to defendants in error for the value of their products thus sold, on the ground no affidavits were supplied by the persons who had used the stock food.   Again, it is further shown that plaintiffs in error sent an agent to settle with the dissatisfied customers of defendants in error, and that the agent called on a number of these customers and settled with them, receiving one-half or less of the amount due in full, thus further recognizing their complaints without any affidavit.

The record contains abundant proof that plaintiffs in error had full notice of the failure of their goods to satisfy the express warranty, and their liability to furnish defendants in error a like amount of stock food did not depend on an affidavit being furnished, after the condition had been waived.   Plaintiffs in error were therefore in default on their part of the contract in not furnishing or tendering a sufficient amount of stock food to make good the loss sustained in the sales made with an express warranty.   There was, therefore, no error in the ruling of the court in admitting the evidence, nor in the instructions on this subject. On the trial one of the defendants in error was permitted to testify that certain customers refused to pay for the stock food they had received for the reason that the food had not proven beneficial to the stock.   This evidence was based on the reports received from the customers, and was therefore hearsay evidence and not admissible; but we are of the opinion that the error of the court in this respect is harmless, since the facts reported and testified to, were testified

to·by other witnesses having actual knowledge. Chicago, Burlington & Quincy R. R. Co. v. Elizabeth Gregory, 58 Ill. 272; Village of Ava v. Grenawalt, 73 App. 633.

Upon the whole record we are satisfied the judgment is right, and while there may be slight errors in some of the instructions there is nothing requiring a reversal, and the judgment is therefore affirmed.

*Affirmed.*