# C. E. HENDERSON, RECEIVER OF THE I. B. & W. RAILWAY,

## v.

# GEORGE W. COONS, ADMINISTRATOR, ETC.

*Railroads—Personal Injuries—Improperly Placed Cattle Guard—Assumption of Risk—Contributory Negligence—Damages.*

1. In an action brought to recover for the death of a railroad brakeman, alleged to have been caused by the improper placing of a cattle guard with reference to the head of a switch, it is *held:* That the switch was appropriately placed; that any danger that could arise therefrom was a risk assumed as an incident of the employment; and that deceased was guilty of contributory negligence in endeavoring to uncouple cars of a train while the same was in motion.

2. A brakeman who has been running over a certain piece of road for about three weeks may be presumed to know the location of a cattle guard with reference to a switch, whether any switching has been done by him at such point or not.

[Opinion filed February 21, 1889.]

APPEAL from the Circuit Court of McLean County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. FRANK Y. HAMILTON, JAMES S. EWING and C. W. FAIRBANKS, for appellant.

Messrs. M. W. PACKARD and J. P. LINDLEY, for appellee.

WALL, P. J. The appellee, as administrator of Robert Irwin, deceased, recovered a judgment against the appellant for $2,250 for causing the death of said Irwin.

The deceased was employed as a brakeman on the railroad of appellant, and was killed while engaged in duties incident to that service.

The train (a freight) going west had occasion to take two loaded cars off the side track at Danvers. Between those

cars and the end of the side track were two empty cars, and it was necessary to pull the four cars out, push the loads on the main track, and the empties back on the side tracks.

In doing this, Irwin was to uncouple the loaded cars from the empties, and after the engine with the four cars had pulled onto the main track, he, being on top of the second or third car, gave the engineer the signal to stop, and getting down to the ground went in between the cars to uncouple. The engine and cars again moved slowly forward (but whether on his signal is not very clear), and he not getting the pin out of the link (as is supposed), walked along until a cattle guard was reached. Just then Allen, another brakeman, who was attending the switch, told him to "look out for the cattle guard," when he stepped into it, and losing his balance, fell, and received injuries from which he soon died. The negligence alleged against the company is that this cattle guard was too near the head of the switch, making it dangerous to perform such work at that place.

The cattle guard was necessarily there, the place of its location being the western line of the corporation of Danvers. The grounds of the company extended eastward about eighty rods, and the side track was of nearly that length, running from near the east line of the premises to within about eighty feet of the cattle guard. We are unable to see any negligence on the part of the railroad company in thus locating the switch. There was nothing unusual about such an arrangement, the situation being considered, nor was it necessarily more dangerous than if the head of the switch and the cattle guard had been further apart. Had the distance been greater, the cattle guard might not have been in the way on this occasion, but it might on some other when a longer train required uncoupling at a point further west. In other words, it would be purely a matter of speculation to determine in advance the best relative distance, considering the points where such uncoupling or coupling would be made.

The law regards the direct, not the remote and contingent cause as the basis for liability. As Bacon puts it, "It were infinite for the law to consider the course of causes and their

Henderson v. Coons.

impulsions, one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree."

Now the immediate cause here was that the deceased did not use proper care for his own safety. He was doing a dangerous and unnecessary thing. He could have uncoupled while the cars were still, and could have held the train until he gave the signal to proceed.

The ground was slippery from ice and sleet, and therefore it was especially dangerous to attempt to uncouple while in motion.

The evidence shows that he adopted the most dangerous method—and certainly it would need no proof to convince the mind that such an act must be hazardous in the extreme. The fact is not changed by showing that it is a frequent or even general practice. For the sake of saving a few seconds of time, a man should not so imperil his life.

But if it were conceded that the course adopted by deceased was regular and legitimate, still we think the extra danger from the location of the cattle guards on this particular occasion, was a hazard incident to the service which can furnish no ground of action.

It is to be presumed that the deceased contracted with reference to it and assumed the risk. He had been running over the road three weeks or perhaps more, and while it is not shown that he had done any switching at this point, he must have known the cattle guard was there. It was plainly visible, and the wing fences which came up to it on either side made the place the more noticeable.

The fact was, no doubt, as he stated to the witness Frankeberger, he forgot the cattle guard, and while the casualty is a sad one, yet the facts do not establish negligence on the part of the railroad company.

The judgment will be reversed, and there being in our opinion no cause of action, the case will not be remanded.

*Reversed.*