PEORIA, DECATUR & EVANSVILLE RAILWAY COMPANY

v.

EMMA PUCKETT, ADMINISTRATRIX.

*Railroads—Negligence of —Open Pit—Personal Injuries—Evidence— Instructions—Assumption of Risk—Practice.*

1. A court should, if asked, submit to the jury every proposition of fact, if the evidence adduced in its support is of such force that fair-minded men might doubt or debate as to whether or not it had been proven, and an instruction as to the rule of law appropriate to such a state of case ought to be given.
2. While the court should not give an instruction when there is no evidence to base it upon, the probative force and weight of competent evidence

is for the jury, and an instruction should not be refused because the court may believe that the weight of the evidence does not support it.

3. Instructions should leave the jury free to differ from the court as to the weight of the evidence in a given case.

4. Whether the dangers attending the disconnecting of cars in motion are greater than if the same were standing still, is a question of fact, not of law. If one mode is more dangerous than the other, and a brakeman voluntarily adopts the more dangerous, he can not recover if injured, for the reason that his course was not dictated by ordinary care for his own safety.

5. Whether or not a railroad company expected and required its brakemen to disconnect cars while in motion, is a question of fact for the jury in a given case.

6. If a brakeman is required by his company to perform his duties in a manner known to be perilous, when a safer mode might be adopted, it becomes the duty of the brakeman to determine whether he will accept service under such rules, or remain in such employment. If he accepts and remains he must be deemed to have assumed the extra hazard of doing the work as required by the employer, and what additional dangers attend such performance of the work, is a question of fact, not of law.

7. It does not follow that such employe can not, by any possibility, recover for an injury received while doing the work in the more dangerous though required manner. He only assumes the extra hazards attendant upon the required manner of doing the work, and if he executes the duty with care and caution, proportionate to such additional dangers, it can not be said that he has failed to use ordinary care, merely because he consented to undertake the performance of an act in a manner required, when a less dangerous mode might have been adopted by the employer.

8. If a brakeman be required to thus do such work, and while attempting to perform it with care and prudence commensurate with the increased danger of such duty, he is injured, not by some peril attendant upon the manner of doing the work, but by a danger arising from a failure of the railroad company to use reasonable care to discharge a duty incumbent by law upon it, a recovery may be had for such injury.

[Opinion filed January 30, 1892.]

APPEAL from the Circuit Court of Coles County; the Hon. J. F. HUGHES, Judge, presiding.

Messrs. STEVENS & HORTON and WILEY & NEAL, for appellant.

Messrs. CRAIG & CRAIG, for appellee.

BOGGS, J. This was an action brought in the Circuit Court

of Coles County, by the appellee, upon a declaration charging that the appellant company had caused the death of John F. Puckett, appellee's intestate, by negligently maintaining or allowing to remain in the track of its road, the pit or hole of a cattle guard at a place where brakemen, when switching cars at the station of Lerna, would and must stop when coupling or uncoupling cars, and that the deceased while in the employ of the appellant as a brakeman, and in discharge of his duty in switching cars at Lerna, with due and ordinary care for his own safety, without knowledge of the existence of the dangerous defect in, or condition of, the track, stepped into such pit or hole and was killed by the train. A trial before a jury resulted in a verdict and judgment against the appellant in the sum of $2,500, from which this appeal is prosecuted to this court.

The existence of the pit of a cattle guard some three feet in depth and about five feet in width in the track of appellant's road about twenty-three steps west of the west end of the switch at Lerna, is fully shown by the proof. Whether it was still in use and maintained as a cattle guard, or had been abandoned for that purpose and the pit or hole negligently and unnecessarily allowed to remain open in the track, was a contested question of fact.

That the deceased was in some manner struck and killed by the train is conceded by the appellant.

There is, however, no direct proof that he stepped into the pit or hole of the cattle guard and in that way lost his life; but appellee contends that such is to be reasonably inferred from facts and circumstances that were proven, while appellant insists that the inferences reasonably arising from the same facts are that he did not lose his life by stepping into the cattle guard, or in any way by reason of the existence of the cattle guard in the track. The facts from which the litigants draw inferences so widely at variance, are few, and supported by the evidence practically without contradiction.

These facts are, that the deceased was employed as a brakeman on a freight train of the appellant company which came into Lerna from the east about midnight on the 6th day

of December, 1890. In the train were two cars, to be left on the switch at that station. To accomplish this the train was disconnected, and that portion of it in the rear of the two cars that were to be put in the switch, left standing at the depot, while the remainder of the train was pulled by the locomotive up the main track in a westwardly direction, until beyond the west end of the switch, and there stopped. The intention was to put this part of the train as soon as the switch could be opened into a somewhat rapid backward motion, and while it was so moving, to uncouple the two cars that were to be left, and allow them to run into the switch by the momentum gained from the motion of the train.

Benjamin Newkirk, also a brakeman upon the same train, was stationed at the switch block, charged with the duty of opening the switch when signaled to do so. The deceased was foreman of the crew of train hands and had control of this work. He was on the top of a box car and after the train had passed along the main track beyond the end of the switch, he signaled to Newkirk to open the switch and directed him to signal the engineer to back the train. This Newkirk did, and the engineer obeyed the signal. While the cars were thus in motion coming back toward the open switch Newkirk saw the deceased, with a lantern in his hand, walking on the top of a car, next to the one to be uncoupled. No one saw him after that until he was discovered by the engineer lying fatally injured on the ground, north of and by the side of the railroad track. His body lay just north of the cattle guard in question, his feet or legs extending partly under it. There is no direct evidence as to how he got or came down from the top of the car.

The cars were uncoupled as was intended to be done, so that it seems clear that he removed the coupling pin. The ladder by which he would descend from the car was on the east end, near the southeast corner of the car. The only marks of blood to be found was on the iron rail on the north side of the track over the first and second spaces, between the ties at the northwest corner of the cattle guard. No footprints were discernible on the track of the railroad or in the

cattle guard.   The brakeman Newkirk testified that he could have seen the deceased had he been upon the north side of the track with his lantern, and that he did not see him there.

The position of the appellee before the jury was, that it was to be reasonably inferred from these facts that the deceased came down the ladder onto the track of the railroad and removed the coupling pin while walking on the track between the moving cars, and while doing so stepped into the cattle guard and was struck and killed by the train.

In opposition to this theory, the appellant argued that if the deceased came down the ladder to the track he would have been between the moving cars south of the center of the track and of the bumpers of the cars, and if, while there disconnecting the cars, he had stepped into the cattle guard, he would most likely have fallen upon or into the cattle guard south of the center of the track, and that in any event he would not, under the circumstances, have fallen across the iron rail at the northwest corner of the cattle guard, where, from the marks of blood, they argue it was clear that the body of the deceased first struck the rail.   The position of the appellant before the jury was, that the most reasonable conclusion deducible from the evidence was, that the deceased did not come down the ladder to the track, but that he only descended the ladder far enough to enable him, by inclining his body to the north, to reach the coupling pin, and that while thus clinging to the ladder with one hand, he removed the pin with the other hand, and while doing so, in some way lost his hold upon the ladder and fell over the bumper of the cars to the north side of the track, and was there struck and killed by the train, and that the pit or hole of the cattle guard did not in any way cause his death.

These conflicting theories were each supported by circumstances appearing in the evidence, and there is nothing but circumstances to substantiate either of them.

Counsel for appellee asked and received from the court an instruction to the jury, that if the deceased was killed by stepping into the cattle guard according to their theory of the manner of his death, the verdict should be against the

appellant, which, for the present, may be conceded to be correct; but the court refused the complement of this instruction that there could be no recovery if the deceased lost his life according to the theory of the appellant. Two instructions, numbers twelve and fourteen, both to that effect, were asked of and refused by the court.

This we think was error. The effect upon the jury who had listened to the contention of the parties and witnessed their efforts to support and sustain their respective theories, could but be to lead the jury to the conclusion that the court gave no consideration to the position taken by the appellant, nor to the facts and circumstances in its support, but regarded the theory of the appellee only as being worthy of the attention or thought of the jury.

It has been well stated as a true rule, that the court should, if asked, submit to the jury every proposition of fact, if the evidence adduced in its support is of such force that fair minded men might doubt or debate as to whether or not it had been proven, and that an instruction as to the rule of law appropriate to such a state of case ought to be given.

While the court should not give an instruction when there is no evidence to base it upon, still the probative force and weight of competent evidence is for the jury, and an instruction should not be refused because the court may believe that the weight of the evidence does not support it. The jury may differ from the court as to the weight of the evidence, and the instructions should leave them free to do so.

Speaking upon this point it is said by our Supreme Court in the case of C., R. I. & P. R. Co. v. Lewis, 109 Ill. 120: "It is not necessary that the court should be satisfied that the hypothetical case stated in an instruction is fully sustained by the testimony; * * * that would practically include the services of a jury and would debar a party of the constitutional right to have the cause tried by a jury. * * * A party has the right to have submitted to the jury any hypothetical case the evidence tends to sustain, otherwise the court might try the case without the intervention of a jury."

Again, it is ruled in the cases of C., B. & Q. R. Co. v. Greg-

ory, 58 Ill. 272, and Missouri Furnace Co. v. Abend, 107 Ill. 44, that "it is not necessary that a hypothetical case be supported by positive evidence before an instruction can be based upon it; but that if there is no direct evidence of a material fact, still if circumstances are proven from which the fact might be reasonably inferred, it is sufficient upon which to base an instruction."

If this were not so, the instruction given for the appellee should have been refused, for it is not based upon any direct evidence that the deceased stepped into the cattle guard, but only upon facts and circumstances from which it might be inferred that such was the manner and cause of his death.

Inferences reasonably arising from other facts and circumstances proven, tended strongly to support the hypothesis of the appellant. The jury should have been left free by the instruction to exercise their judgment upon the whole case. This, we think, was not done, and for that reason the judgment must be reversed.

The right of the appellee to recover is based upon the claim that the deceased went between the moving cars to disconnect them. This, appellant insists, was not the exercise of ordinary care, but was an act in itself so reckless and dangerous as to preclude a recovery, and for that reason the case ought not to be remanded.

Whether the dangers of disconnecting cars when in motion are greater than if the cars be disconnected when standing still, is a question of fact, not of law. If one mode is in fact more dangerous than the other, and a brakeman voluntarily adopts the more dangerous, he can not recover if injured, because his course was not dictated by ordinary care for his own safety.

The appellee's position, however, is, that the appellant company expected and required the deceased to disconnect the cars while in motion. Proof was introduced tending, as the appellee claims, to support this position, to rebut which appellant produced in evidence its rules, which it contends prohibits its brakemen from so uncoupling the cars. The truth of this contention is a question of fact for the jury to determine.

P., D. & E. Ry. Co. v. Puckett.

If a brakeman is required by a railroad company to discon-nect cars in a manner known to be perilous, when a safer mode might be adopted, it becomes the duty of the brakeman to determine whether he will accept service under such rules or remain in such employment.   If he does accept service under such rules and remains in such employment, it is held that he is deemed to have assumed the extra hazard of doing the work as required by the employer.   United States Rolling Stock Co. v. Wilder, 116 Ill. 110.

What additional dangers do attend such performance of the work, is a question of fact, not of law.   The law is that no redress can be had for injuries received from them, but it does not follow that such employe can not by any possibility recover for an injury received while doing the work in the more dangerous, though required manner.   The brakeman only assumes the extra hazards attendant upon the required manner of doing the work, and if he executes the duty with care and caution proportionate to such additional dangers, it can not be said that he has failed to use ordinary care, merely because he consented to undertake the performance of an act in a manner required, when a less dangerous mode might have been adopted by the employer.

If a brakeman be required to thus do such work, and while attempting to perform it with care and prudence commensurate with the increased danger of such duty he is injured, not by some peril attendant upon the manner of doing the work, but by a danger arising from a failure of the railroad company to use reasonable care to discharge a duty incumbent by law upon it, no reason is perceived why a recovery may not be had for such injury.

The case ought, therefore, be remanded as well as the judg-ment reversed, which is accordingly done.

*Reversed and remanded.*