**Harry L. Richardson, Appellee, v. Iowa Central Railway Company, Appellant.**

**Gen. No. 5,672.**

1. MASTER AND SERVANT—*presumption that brakeman knows danger of crossing switch.* It is presumed that a brakeman knew the location and construction of a switch and the danger of crossing in front of a moving car.

2. Master and servant—*where tie in railroad is partly burned away.* Where plaintiff, a brakeman, is injured while crossing a switch in front of a moving car, it is not negligence for the railway company to have a partly burned tie in the track when the injury cannot be attributed to it.

3. Master and servant—*choosing unsafe method.* Where a brakeman is injured while coupling the air brakes on moving cars when he could just as well have done so while they were standing still, he assumes the risk incident to the operation.

4. Master and servant—*custom of others in same kind of occupation does not excuse one who takes risk.* The fact that it is the custom to couple the air brakes while cars are in motion does not relieve a brakeman of the duty of exercising due care for his own safety.

5. Master and servant—*contributory negligence.* Judgment for plaintiff reversed where the evidence shows plaintiff was not in the exercise of due care for his own safety at the time he received the injury and his negligence resulted in his injuries.

Appeal from the Circuit Court of Mercer county; the Hon. Frank D. Ramsay, Judge, presiding. Heard in this court at the October term, 1912. Reversed with finding of facts. Opinion filed October 15, 1912. Rehearing denied April 3, 1913.

George W. Seevers, W. H. Bremner and W. J. Graham, for appellant.

John M. Wilson, N. F. Anderson and James H. Andrews, for appellee.

Mr. Justice Whitney delivered the opinion of the court.

Appellee commenced his suit against appellant to recover for injuries alleged to have been sustained by him while acting as a brakeman on a freight train of appellant at Monmouth, Illinois, on the morning of October 17, 1909. His declaration alleges negligence of appellant in its railroad yards at Monmouth. By the first count of the declaration it is alleged that appellant was negligent in not keeping its tracks ballasted, and in allowing spaces to remain between the ties and underneath the rails in which there was no ballast. The second count of the declaration alleged

the operation of the railroad, and that it was the duty of appellee to assist in adjusting and lining up the air-brake devices on his train, and to run over the ties, rails, etc., of appellant, in the yards at Monmouth, while his train was being made up; that there was a certain switch constructed in such a defective manner on account of a burned or chiseled tie, that while appellee was performing his duties, his foot caught under a part of this switch, and between certain ties used in the construction of the switch, and thereby he was run down by the train in question and injured. A trial was had, resulting in a verdict and judgment of $7,000 damages, and defendant below appeals.

The train was No. 96 and was running from Oskaloosa to Peoria, passing Monmouth on the trip. Under the rules of appellant, when the train arrived, it passed into the custody of the yard master and his crew, who did the switching and cutting out of cars to be there left, and the switching crew made up the train again, when it was placed in charge of the train crew. The train crew were then required to couple up the air on the brakes and proceed. With the train in question, this course was pursued, and at the time the accident happened, the switching crew were in charge of the train, doing the necessary switching. Before the switching was finished, appellee found that it would save time for the train crew, if he coupled up the air while the train was being made up. A cut, as it is called, of the cars was then being backed west by the yard crew for the purpose of coupling it to another part of the train. Appellee, while the cars were in motion, started to fix the air brake ready to be coupled, when the two parts of the train came together, and in so doing started to run across the track just in front of a freight car then being pushed west. He stumbled and fell on the track, was caught by a freight car and his arm crushed.

He contends that he caught his foot on the rail, on one side or the other of the switch, alleged in the dec-

laration to be defectively constructed, and that at that point the tie underneath some iron plates had been burned, or in some way worn down so that there was a larger space than there otherwise would have been underneath the rail, and that it was the negligence of appellee to use a tie, or suffer one to remain in that was partially burned.

We are satisfied from the proofs that at the switch stand in question there could not be sufficient movement of a switch bar to answer the purposes of a switch, without there being a space under each rail large enough so that any one crossing the track, could catch his toe under the rail in the open space.

Appellee was a railroad man and must be presumed to have known that switch stand was there, and to have known, in a general way at least, the construction of railway switches, and that it was dangerous to cross in front of a moving car at a switch, and if he caught his foot there, we are of the opinion he must be considered to have been injured by his own neglect, and that it was not negligence for the company to have an opening under the rail at the switch, and that the part burned away, or worn away, but slightly increased the size of the hole underneath the tie, and that the injury cannot be attributed merely to that.

There is a conflict in the evidence, at least, from which it might appear that appellee was not injured at the place where the switch is located, but 15 or 20 feet further west, where there was no hole under the rail, and that in fact he simply stumbled over the rail itself, through his own carelessness.

It is apparent from the evidence, that appellee knew of the existence of a rule of the company, by which, when the train reached the yards at Monmouth, it went into the charge of the switch crew, so that he could hardly be said to be in the line of his duty at the time he was injured.

This is substantially his story of the accident, and on that alone we think it is clear that he was guilty of

negligence.   This is what he testified to:   "When Hawkins went out I knew he was the switchman.   I did not see him give any signal.   I might have seen him, but I did not pay any attention to it.   Was not out there watching them switch.   Failor (the yard foreman) came in also.   He told me they had another cut to make.   I knew they had that one cut to make.   I did not see Hawkins signal to go back on the train when they did.   I had not given any signal yet.   I knew when he did signal that train to the engineer, that they would back that section down, and I went behind those cars, knowing they were going to back them down there sometime.   I knew they would back them down in time, but did not know how soon they would do it.   I knew when I went behind that car that they might back on me at any time.   I knew it was their business to finish that switching, and I knew the switching was not done.   I went across there to turn that air cock, or angle cock.   I knew in a way that after the cars were backed down onto the rest of the train, and the engine brought back and put on the train, that the switch crew would then leave that place and turn the train over to the train crew, but they never notified us, or anything of that kind.   I knew that after the train was made up, I would have an opportunity to turn these angle cocks, and line up my air.   That could have been done by our train crew when the train was standing still, but I went through there behind that car to turn that angle cock to save time, and by that I saved four or five minutes."

It was attempted to be shown by appellee that it had been the custom for years for train men to adjust the air brakes whenever they could, sometimes while the train was being made up, and sometimes after it was made up; but in either event, whether it was a custom or not, it is clearly apparent from the evidence that the air brakes could have been adjusted after the train was made up, for he testified the train would have waited until he had finished doing the work.   He

sought to fix the air brakes while the cars were in motion, when he could have done it when the cars were standing still. It is clear that the adjusting of the air brakes while the cars were in motion was far more dangerous than fixing them while the cars were standing still. If one mode is in fact more dangerous than another, and he had his option to choose between the dangerous and the less dangerous, and voluntarily adopted the more dangerous method he cannot recover, if injured, because his course was not dictated by ordinary care for his own safety. Peoria, D. & E. R. Co. v. Puckett, 42 Ill. App. 642.

If he could adjust the air brakes while the cars were standing still, he had no right to do so while the cars were moving, and if he did so, he assumed the risk incident to that operation. In other words, to save a few minutes in time, when he had the option of choosing the safer method, he had no right to imperil life or limb. Henderson v. Coons, 31 Ill. App. 75. The evidence as to the practice of others in coupling the air brakes does not help him out because merely showing the custom or practice of others would not relieve him of the duty of exercising due care and caution for his own safety.

The customary way might be a very negligent way, and even though the practice had been so long established that the company could be charged with notice of it, still, appellee would not be excused thereby from the duty of using care for his own safety. Union Wire Mattress Co. v. Wiegref, 133 Ill. App. 514; Chicago, R. I. & P. R. Co. v. Clark, 108 Ill. 113.

In the view this court takes of this case it is considered unnecessary to pass on the questions of the rulings of the trial court on the evidence, or alleged errors in the giving or refusing of instructions.

The evidence shows to the satisfaction of this court that appellee was careless; that he was not using due care and caution for his own safety at the time he was injured. The judgment is therefore reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment. We find that appellee was not in the exercise of due care for his own safety at the time when he received the injury, and that he was guilty of negligence which resulted in his injuries.