## GEORGE E. WARD v. INTER-ISLAND STEAM NAVIGATION COMPANY, LIMITED, A HAWAIIAN CORPORATION.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

HON. W. J. ROBINSON, JUDGE.

ARGUED FEBRUARY 15, 1915.          DECIDED MARCH 24, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

MASTER AND SERVANT—*negligence—defective appliance.*

If the master negligently furnishes unsuitable appliances for conducting his business by reason of which his servant is injured, he is responsible in damages to the servant for such injuries, although the latter may have been negligent, unless the negligence of the latter was the proximate cause, or a proximate cause, of the injury.

SAME—*proximate cause question for jury.*

Whether an act of negligence is the proximate cause of an injury is a question for the jury to decide where the evidence is conflicting; or where the answer depends upon matters of discretion, experience and judgment; and in all cases where more than one inference may be reasonably drawn from the facts which the evidence tends to prove.

SAME—*intervening cause.*

The master is not exempt from liability for an injury to his servant, caused by a defective appliance, by reason of an intervening act or cause, where the latter grew out of, was related to, and made necessary by, the negligence of the master in furnishing such defective appliance.

INSTRUCTIONS—*interest of witness.*

An instruction which told the jury to take into consideration the interest of the plaintiff in the result of the suit when weighing his testimony was properly refused, especially as the court had instructed the jury that in weighing the evidence of witnesses they should take into consideration the interest, if any, of the witness, in the result of the suit.

VERDICT—*excessive damages.*

A verdict for $13,000 damages held to be not excessive where the evidence shows that the plaintiff was a strong, healthy, robust man at the time of the accident, forty years of age, earning six

dollars per day, and by reason of the injury complained of suffered a fracture of the skull, concussion of the brain, a central dislocation of the hip, a distortion of the spine, impairment of vision and hearing, considerably diminished earning capacity, and had continually suffered great physical pain; the assessment of damages being left, by law, to the discretion of the jury, whose verdict will not be disturbed unless so excessive and outrageous, under the evidence, as to demonstrate that they permitted their passions and prejudices to mislead them into giving a verdict against the rules of law.

OPINION OF THE COURT BY QUARLES, J.

At the conclusion of the evidence on behalf of the plaintiff (now defendant in error), at the first trial, the circuit court entered judgment of nonsuit, in favor of the defendant (now plaintiff in error), to review which, the plaintiff sued out a writ of error in this court, and the judgment of nonsuit was reversed. We will here refer to the former decision of this court (ante page 66) as showing the material facts. An examination of the record now before us shows that the evidence is substantially the same so far as the plaintiff's case is concerned, as at the former hearing. Upon the return of the case a new trial was had and a verdict for $13,000 damages rendered in behalf of the plaintiff; and, to review the judgment entered thereon, defendant has sued out a writ of error in this court. In the former decision this court held that the contention of the plaintiff that the negligence of the defendant in furnishing a cable which was burred and unsafe was the proximate cause of the injuries, which he sustained, should have been submitted to the jury, on the evidence, under proper instructions. The defendant has assigned a number of errors of law occurring during the progress of the cause, some of which have not been argued, some abandoned, and some of them relied upon for a reversal of the judgment now to be reviewed. The principal contention of the defendant now, is, that the court erred in refusing to give its request for an instructed verdict, basing this contention upon the ground that, under the evidence, the ques-

tion as to the proximate cause of the injury was one of law to be decided by the court, and not a question for the jury. It will thus be seen that the principal question before us is the same, in a different form, as that before us at the former hearing.

After full consideration we are of the opinion that the former decision in this case is correct, under the evidence disclosed in the record, and under the authorities. We therefore adhere to the former decision, and hold that the question of proximate cause was properly submitted to the jury. It is contended, with much earnestness, on behalf of the defendant, that the defective cable described in the former decision, was not of itself, dangerous; that after it came off the pulleys, and the engine was stopped, it was inert, and incapable of injuring the plaintiff; that it did not injure the plaintiff, and was not the proximate cause of the injury, and, at best, it only furnished the *occasion* for the plaintiff going to replace the cable on the pulleys. If the cable came off the pulleys by reason of its worn condition, as some of the evidence tends to show, and in doing so had struck the plaintiff and injured him, it would follow that the use of the cable in such condition was negligence, and the proximate cause of such injury. But, it is the duty of the master to furnish suitable and safe appliances for his servants to conduct his business with, and this duty is not fulfilled by simply furnishing appliances that may be used, but which, owing to their defective condition, are liable to be misplaced and thereby necessarily subjecting the servant to extraordinary risks by replacing them. In other words, the assumption of the ordinary risks of an employment by the servant does not extend to those risks arising from defective machinery or appliances, where, as in the case at bar, the defects are known to the master, and, at the complaint of the servant, he has promised the servant to replace the defective appliance with one that is suitable. The jury were justified in finding from the evidence three facts which are material to the issues in the case, viz., (1) that owing to the burred condition of the cable, strands of wire protruding

from it from one-sixteenth to one-quarter of an inch, it had a tendency to climb up on, and run off, the pulleys; and, therefore, was not suitable for the purpose for which it was necessarily used; (2) that the defendant promised the plaintiff to replace the cable with a new one, and failed to do so; and (3) that defendant's neglect to replace the defective cable with a new one, made it necessary for the plaintiff to leave his usual work and go upon the elevated track of the defendant (a height of about 25 feet) thereby incurring an extraordinary hazard which would not have existed if a suitable cable had been installed. The jury were also justified in finding that a man of ordinary care and prudence, under the circumstances, would naturally apprehend that the cable would come off the pulleys; and the foreman, Akina, being absent, under such circumstances plaintiff would go and attempt to replace it; that being on an elevated trestle, 25 feet above ground, injury to plaintiff would probably result.

We will notice the principal authorities cited by the defendant to sustain the contention that the defective cable was not the proximate cause of the injury sustained by the plaintiff, and that that question should have been decided by the court by instructing the jury to find for the defendant. In the case of *Carter* v. *Lockey Piano Case Co.*, 177 Mass. 91, the court directed a verdict for the defendant upon the ground that the injury was caused by the negligence of a fellow servant of plaintiff while operating an elevator in failing to use a stopping cable or clamp, there being no negligence of the defendant in failing to supply suitable and safe appliances. In the case of *Mo. Pac. Ry. Co.* v. *Columbia*, 65 Kan. 390, the deceased had worked for the defendant seven years, the last five as fireman on one of its engines; during all that time the defendant had kept piled on its platform at Langley, where the accident occurred, a pile of grain doors, from eleven to fifteen in number, conspicuously placed from fifteen to twenty-two feet from the track, by which the deceased had passed about six hundred

times; along its line the defendant, where there were grain elevators, kept piles of grain doors stored near such elevators, and at stations where there were no elevators (such as Langley) kept such doors piled at the station; the accident whereby deceased lost his life was caused by the grain doors being blown off the platform on to the track, by a violent storm, amounting to a gale; no similar accident had ever occurred before on defendant's road; that the accident would not have occurred but for such storm. These facts were found in a special verdict by the jury, being submitted to them. The jury also found that the wind storm was not the proximate cause of the accident, but the negligence of the defendant in piling the grain doors on an exposed platform was the proximate cause, and found a general verdict for the plaintiff. There was no evidence to show how long the doors had been on the track prior to the accident, or that any officer or agent of the defendant knew that the doors were on the track. On appeal the special verdict was treated as finding the material facts in favor of the defendant, and the court held that the conclusion of the jury as to the proximate cause of the accident was inconsistent with the facts found, holding the accident to have been caused by the act of God, one which no reasonably prudent man would have anticipated, set aside the verdict and directed the trial court to enter, in accord with the special verdict of the jury, a judgment in favor of the defendant. In *Leavitt* v. *Ry. Co.*, 89 Me. 509, the injury resulted from the independent act of a contractor, not of the defendant, and the controlling principle of the decision is that an employer is not responsible for the negligent acts of a contractor, or his servants, when they act independently and are not under the control and direction of the employer. In the case of *Empire State Cattle Co.* v. *Atchison, etc., Ry. Co.*, 135 Fed. 135, 140, plaintiff sought to recover damages for loss of cattle in an unprecedented flood, on the ground that it had been negligent in delaying the shipment, and claiming that if there had been no delay in making the shipment, the cattle might not have

been lost. There, the court properly held that the defendant was not liable for an injury caused by the act of God which it could not reasonably have apprehended. We do not regard those cases as in point here.

We will cite a few authorities in addition to those cited in the former opinion in this case, which recognize, and, as we think, sustain the principles applicable hereto. In *Peoria, etc., Ry. Co.* v. *Puckett*, 42 Ill. App. 642, a brakeman was required to disconnect cars while they were in motion, and although held to have assumed the extra hazard of doing so, the court said, at page 649: "If a brakeman be required to thus do such work, and while attempting to perform it with care and prudence commensurate with the increased danger of such duty he is injured, not by some peril attendant upon the manner of doing the work, but by a danger arising from a failure of the railroad company to use reasonable care to discharge a duty incumbent by law upon it, no reason is perceived why a recovery may not be had for such injury." "It is the risk of ordinary perils incident to the service that the employee assumes, not the hazards of extraordinary risks added by the failure of the employer to perform the duty enjoined upon him by law." (*Rogers* v. *Leyden*, 127 Ind. 50.) In *Knapp* v. *Ry. Co.*, 65 Iowa 91, 95, the defendant had permitted its road-bed to get into bad condition, being lower at one place than it should be, whereby a train was derailed, and its servant, an engineer, was injured. It was claimed by the defendant that the negligent manner in which the engineer used the lever was the proximate cause of the injury. The court said: "True it is that reversing the lever is one of the ordinary hazards of the plaintiff's employment; yet, if the negligence of the defendant required such act to be done at that particular time, and the plaintiff was not guilty of negligence, but, on the contrary, acted prudently, with due regard for his own safety and the safety of others, then the defendant is liable, because the negligence of the defendant is the proximate cause of the injury." And in the same case, re-

ported in 71 Iowa 41, the court said: "It is next insisted that the verdict is unsupported by the evidence. This claim is based upon the position that the injury to plaintiff resulted from his arm or hand being caught in the latch of the lever, when he reversed it quickly in order to stop the train after it had left the track, and not from his arm or elbow coming in contact with the side or end of the cab, when making the movement as claimed by plaintiff in his testimony. We need not enquire which of these theories is correct. There was evidence to support plaintiff's theory, and the jury may well have found it to be correct. But if it be assumed that defendant's theory as to the cause of the injury be correct, the direct cause was defendant's negligence in failing to keep the track in proper condition, which caused the engine to leave the rails, and required plaintiff to reverse the lever in order to arrest the movement of the engine. If this was done in the exercise of due care, and injury resulted, the proximate cause was defendant's negligence which demanded the reversal of the lever in the manner in which it was done by plaintiff."

· The plaintiff was justified in relying upon the promise of the defendant to replace the defective cable with a new one, and should not be held to have anticipated that defendant would not replace such cable. Neither should he be held to have anticipated that the foreman, Akina, would be absent; or, that he would have to leave the hold of the ship where he was working and go to replace the cable. In the case of *Helfenstein* v. *Medart,* 136 Mo. 595, the court, at page 614, said: "It is true that he assumed all risks that were reasonably incidental to the character of his work, but he did not assume risks which might occur by reason of the negligence of his employer, and which he could not have been expected to anticipate." In *Dickson* v. *Omaha, etc., Ry. Co.,* 124 Mo. 140, the plaintiff's intestate, an engineer, was running his train at a rate of speed that violated a rule of the defendant, and while doing so the engine collided with a bull, the engine was derailed, and the engineer was

killed; the bull had strayed upon the track through a defective fence; a statute required the defendant to fence its track. The court held that the failure of the defendant to keep the fence in repair was the proximate cause of the injury, and not the rate of speed at which the plaintiff's intestate was running his train. This authority recognizes another rule which is well established to the effect that although the servant may have been negligent and thereby contributed to his injury; or, the injury may have been caused in part by the negligence of a fellow servant, yet, if the master has been negligent in keeping his premises, or appliances which he furnishes the servant to carry on his business, in a suitable and safe condition, he is responsible in damages for injuries received by the servant resulting from his negligence, notwithstanding the negligence of the servant, or fellow servant, unless the negligence of the servant, or fellow servant, was the proximate, or a proximate cause of the injury. To the same effect, and sustaining the same principle, see the following authorities: *Eureka, etc., Co.* v. *Wells,* 29 Ind. App. 1, 6; *Hogue* v. *Sligo Furnace Co.,* 62 Mo. App. 491; *Cole* v. *Warren Manfg. Co.,* 63 N. J. L. 626; *Paulmier, etc.,* v. *Erie R. R. Co.,* 34 N. J. L. 151; *Benson* v. *Lumber Co.* (Wash.) 129 Pac. 403; *Missouri, etc., Ry. Co.* v. *Jones* (Tex. Civ. App.) 80 S. W. 852; *Smithwick* v. *Hall, etc.,* 59 Conn. 261; *Coogan* v. *Aeolian Co.,* 87 Conn. 149; *Central Ry. Co.* v. *Mitchell,* 63 Ga. 173; *Reed* v. *Railway Co.,* 72 Iowa 166; *Fickett* v. *Lisbon Falls Fibre Co.,* 91 Me. 268; *Ford* v. *Fitchburg Ry. Co.,* 110 Mass. 240; *McDonald* v. *Mich. Cent. R. Co.,* 108 Mich. 7; *Flynn* v. *Kansas City, etc., Ry. Co.,* 78 Mo. 195; *Stone* v. *Boscawen Mills,* 71 N. H. 288; *Lindsay* v. *Norfolk & So. R. Co.,* 132 N. C. 59; *Orr* v. *Southern Bell Tel. & Tel'g. Co.,* 132 N. C. 691. In *Smithwick* v. *Hall,* supra, the plaintiff, while helping to store ice for the defendant, stood at a point on a raised platform where it was narrow and not protected by a guard rail, and slippery with fragments of ice, contrary to a warning by the foreman that the particular place was dangerous; and while at

such place was injured by a brick wall, negligently constructed by the defendant, falling on him. The court held that he was entitled to substantial damages, saying, at page 269: "Nor was his conduct, legally considered, a cause of the injury. It was a condition rather. If he had not changed his position (from a former one) he might not have been hurt. And so too if he had never been born, or had remained at home on the day of the injury, it would not have happened; yet no one would claim that his birth or his not remaining at home that day can in any just or legal sense be deemed a cause of the injury." "In cases where the defendant fails to perform its duty in furnishing safe and suitable appliances, the plaintiff will not be held to have assumed the risk in undertaking to perform a dangerous work, unless the act itself is obviously so dangerous that in its careful performance the inherent probabilities of injury are greater than those of safety." *Orr* v. *South. Bell Tel. & Tel'g. Co.,* supra, page 694, and authorities there cited. The master assumes the duty of exercising reasonable care and prudence to provide the servant with reasonably safe machinery, appliances and tools to exercise the employment, and to maintain them in a reasonably safe condition. *(Davis* v. *Railroad Co.,* 55 Vt. 84; *Union Pac. Ry. Co.* v. *O'Brien,* 161 U. S. 451.)

Additional authorities other than those cited in the former opinion in this case (ante page 72) upon the proposition that the question of the proximate cause of the injury to plaintiff was a question for the jury are abundant. In *Vinton* v. *Schwab,* 32 Vt. 612, the court said at page 614: "But where there is no conflict in the testimony in regard to the particular facts, that will not always make it a mere question of law which the court may determine. If it still rests upon discretion, experience and judgment, it is a matter of fact and not of law merely. A man in any situation or business is always bound to conform to the rules and usages which prudent and careful men have established in the conduct of similar business under similar circumstances. And it is negligence to make any im-

portant departure from such a course, when it proves more injurious to others than the usual course." And again, it has been said: "What is negligence is a question of law when the facts are undisputed. But where the facts are controverted, or more than one inference can be drawn from them, it is the province of the jury to pass upon an issue involving it. *Deans* v. *Railroad,* 107 N. C. 686. A mixed question is then presented, and it becomes the duty of the judge, at the request of counsel, to tell the jury how to apply the law of negligence to the various phases of the testimony, and the office of the jury to make the application of the law, as given by the court, to the facts as found by them." (*Tillett* v. *Railroad,* 118 N. C. 1031.) If negligence may be inferred from a proven circumstance, the inference should be made by the jury, and not the court. (*Cole* v. *Warren Manf'g. Co.,* supra.) Any conflict in the evidence touching the safety and suitableness of the appliance furnished by the master to the servant with which to conduct the business of the master, makes the question one for the jury whose verdict will not be disturbed. (*Swift & Co. v. Holoubek,* 60 Neb. 784.) But ordinarily the question of negligence is one of intermingled law and fact, and is for the determination of the jury. The law does not—as it cannot—prescribe a general measure of carefulness, except that which varies with the circumstances of each particular case, viz., what would prudent persons ordinarily do under like circumstances. (*Kelly* v. *St. Paul, etc., Ry. Co.,* 29 Minn. 1.) "Where there are doubtful and qualifying circumstances, the question of negligence or want of proper care is a matter of ordinary observation and experience of the conduct of men, and as such, must be left to the jury, as being within their legal province. The law has said, in these cases, that the plaintiff shall have the judgment of twelve men, and not the opinion of one man." (*Bonnell* v. *Del. Lack. & West. R. R. Co.,* 39 N. J. L. 189, 192.) And to the same effect are the following decisions: *Railroad Co.* v. *Stout,* 17 Wall. 657; *Gaynor* v. *Old Colony R. W. Co.,* 100

Mass. 208; *Salter* v. *Utica R. R. Co.*, 88 N. Y. 43; *French* v. *Taunton Branch R. R. Co.*, 116 Mass. 537; and the *Baltimore, etc., R. Co.* v. *Walborn*, 127 Ind. 142, where it is said: "Where the facts are undisputed, and where but one inference can be drawn from the undisputed facts, the question of negligence is one of law; but where more than one inference may be reasonably drawn from the facts, the question is one of fact for the jury, under proper instructions from the court." See *Gardner* v. *Michigan Cent. Ry. Co.*, 150 U. S. 349 and authorities therein cited on page 361. Many other citations along the same lines can be made, but we deem it unnecessary to make them.

It is contended on behalf of the defendant that the plaintiff was guilty of contributory negligence in that he failed to raise the weight taking up the slack of the cable, so as to make it safer and easier to replace the cable upon the pulleys. Upon this phase of the case there were conflicting evidence and theories, that of the plaintiff being that it was not necessary as there were two or three inches of slack at the place where the cable had slipped off the pulleys, all that was necessary; and that lifting the weight would not give any more slack at the place where the cable was to be replaced on the pulleys unless the cable was drawn by hand from the point where the weight was installed, to the point where the cable was to be replaced on the pulleys. The theory of the defendant being that lifting the weight would have given sufficient slack at the point where the pulleys were to be replaced to make it safe to replace them, and that if the weight had been lifted the injury would have been avoided. This feature of the case covering the question whether or not the plaintiff was guilty of contributory negligence which caused his injury was submitted fairly to the jury, by the court, under proper instructions, and the finding of the jury was against the contention of the defendant, and the verdict, so far as the question of contributory negligence on the part of the plaintiff is concerned, should not be disturbed. On this point the jury were instructed as follows: "In determining the issue of plaintiff's

contributory negligence, you may look to all the surrounding facts and circumstances in evidence before you, and determine therefrom whether or not the plaintiff used such care as a person of ordinary prudence would have used under the same or similar circumstances. If you believe from the evidence that he was using ordinary care and prudence during the attempt to replace the cable at the time of the accident, then, I instruct you that the plaintiff was not guilty of contributory negligence. The law does not oblige a servant to pursue a method which is absolutely safe. All that is required of him is that he shall exercise ordinary care and prudence so that he will save himself from injury, and although you may find that the lifting of the weight, or box, might have been the safest course for the plaintiff to pursue, yet, if you find from the evidence that the plaintiff at the time of the accident was exercising ordinary care during his attempt to replace the cable, then he cannot be said to be guilty of contributory negligence that would bar recovery. In other words, the negligence of the plaintiff, in order to bar recovery, must be such as to directly contribute to his injuries, and without which the accident would not have happened; and it is for you to determine from the evidence whether or not the plaintiff was exercising ordinary care and prudence under all the surrounding circumstances." This particular instruction was excepted to by the defendant, and the giving of it is one of the errors assigned here, but we think there was no error in giving it. At the request of the defendant the court gave the following instruction, more favorable to the defendant, we think, than it was entitled to, to wit: "To warrant a recovery in this case it must appear that the injury was due solely to the want of ordinary care on the part of the employer—the defendant, and unless you so find your verdict should be for the defendant. If you find that the injury was due to the want of such care on the part of the employer combined with want of ordinary care on the part of the plaintiff then both are at fault and one cannot recover from the other. Where both parties are negligent there can be

no recovery by either." As we have heretofore shown, the plaintiff is not precluded from recovering on the ground that he has been negligent, unless his negligence was the proximate cause, or a proximate cause, of his injury. Later, at the request of the defendant, the court gave, after making an immaterial modification, the following instruction: "The law places upon all persons the duty of exercising reasonable care to avoid injury, and even though the jury should believe, from the evidence, that the defendant was negligent and that the plaintiff was injured thereby, if the evidence also shows that the injury would have been avoided by the exercise of ordinary care by the plaintiff, and that the plaintiff did not exercise such care, you should find for the defendant."

It is also contended with much earnestness on behalf of the defendant that the injury to the plaintiff was the result of an efficient intervening cause between the alleged negligence of the defendant in failing to replace the defective cable with a suitable one, and such injury, viz., the act of the plaintiff in attempting to replace the cable on the pulleys, for which reason the defendant is not liable. Under the instructions quoted, and a number of other instructions given by the court, the jury were fully instructed as to the duties of the defendant, as master, and of the plaintiff, as servant. The jury were also fully instructed as to such contributory negligence on the part of the plaintiff as would prevent him from recovering, and the charge of the court, as a whole, was as favorable to the defendant as the law will justify, if not more so. Under the evidence and the instructions the jury were authorized to find the following facts: That the worn and burred condition of the cable caused it to come off the pulleys; that it had a short time before, on two different occasions, come off the pulleys from the same cause; that the defendant's attention was called to the defective condition of the cable, and it promised the plaintiff to replace the cable with a new one; that if it had done so the injury to plaintiff would not have occurred; that a reasonable and prudent man

under the circumstances would have anticipated that the cable would come off the pulleys, and under the circumstances, the plaintiff would attempt to replace it, and that the injury to plaintiff was probable, or liable to happen, owing to the height of the conveyor above ground; that defendant's failure to replace the defective cable with a suitable one was an act of negligence, and the proximate cause of the injury; that the hazard of replacing the cable was an extraordinary one made necessary by the defendant's negligence, and the attempt to replace the cable made by plaintiff was not a predominating cause of the injury, but related and connected to defendant's act of negligence, and made necessary thereby; that the plaintiff was not negligent, and acted as an ordinarily careful and prudent man would have acted under the circumstances.

Defendant (plaintiff in error) contends that the defective cable only gave occasion to the act of plaintiff in attempting to replace it on the pulleys. This is true, in that it became necessary to replace the cable. Now this occasion was an incident to the condition of the cable and grew out of it. The attempt to replace the cable was another incident, and if considered as an intervening act or cause, it is obvious that it grew out of, was related to, and made necessary by, the defective condition of the cable; and was not a separate, distinct, unrelated or disconnected intervening cause, such as will relieve the master from liability. Many authorities might be cited upon this point, but we will cite only a few of them. "Here, as in other cases, where an injury is the result of several causes combining or concurring to produce it, the master will be liable if he is responsible for any one of such causes. Here, as in other relations, the direct or proximate consequences of a wrongful act are those which occur without any intervening cause; and, where an efficient adequate cause has been found, it must be considered as the true cause unless another, not incident to it, but independent of it, is shown to have intervened. The test is, to consider where the injury would have happened to the servant but for the negli-

gence of the master with regard to the concurrent act or omission of the third person.   Thus, where a servant was injured because of a defective appliance which the master should have repaired, the latter was not relieved from liability because a proximate cause of the accident was the act of a third person, if it would not have occurred but for the failure to repair." (Com. on the Law of Neg., Thompson, Vol. IV, Sec. 3857.) "Negligence and wrongful conduct having been established, the general rule is, that the defendant is liable for the natural and proximate damages resulting therefrom—such consequences as might probably ensue in the natural and ordinary course of events.   Though the defendant is not responsible for any events produced by independent intervening circumstances, which have no connection with the primary act; if the intervening agencies are put in operation by the wrongful act of the defendant, the injuries directly produced by such agencies are proximate consequences of the primary cause, though they may not have been contemplated or foreseen.   The relation of cause and effect between the tortious act and the intervening agencies being shown, the same relation between the primary wrong and the subsequent injuries is also established; the first wrongful act operating through a succession of circumstances, each connected with, and originated by the next preceding."   (*East Tenn., Va. & Ga. R. R. Co.* v. *Lockhart,* 79 Ala. 315.)   These authorities are in point here, and with other authorities herein cited, and those cited in the former opinion in this case (ante page 73), establish the liability of the defendant for the injury sustained by plaintiff, and the verdict is sustained under the evidence, and under the instructions given by the trial court.

One of the assignments of error is to the refusal of the trial court to give defendant's request for instruction No. 19, which was in the following words:   "The jury is instructed that while a plaintiff is, by law, allowed to testify in his own behalf, yet the jury have the right, in weighing his testimony and determining how much credence is to be given it, to take into considera-

tion the fact that he is the plaintiff and directly interested in the result of the suit." This instruction was properly refused. It referred to and made prominent one feature of the evidence, that is, the interest of the plaintiff in the result of the suit. The court had theretofore given a very proper instruction which applied to plaintiff, as a witness, the same as other witnesses, to the effect, that, in weighing the evidence of witnesses, they should take into consideration "their interest or lack of interest, if any, in the result of the suit."

One of the errors assigned by defendant is that the verdict for $13,000 is excessive and unreasonable. This was also one of the grounds of the motion for a new trial, which the trial court overruled. The evidence shows that prior to the injury plaintiff was a healthy, strong, robust man, with unimpaired vision and hearing, of the age of forty years, and earning six dollars per day; that his expectancy of life was 27.61 years; that he suffered a basic fracture of the skull, concussion of the brain, a central dislocation of the hip, a distortion of the spine, an impairment of vision and hearing, and that his earning capacity was considerably diminished; and, from the time of the injury to the trial he suffered, continually, great physical pain. As to the measure of damages, among other instructions, the court gave the following: "If the jury finds from the evidence that the plaintiff is entitled to recover, as alleged in his complaint, in estimating the plaintiff's damages you may take into consideration his physical condition prior to the injury, and also his physical condition since the injury, if you believe from the evidence that his physical condition since the accident has been impaired as a result of such injury; you may further take into consideration in estimating the damages, if you find that he is entitled to any damages, whether or not he has been deprived, by reason of the negligence of the defendant, of the ability to earn money, and if so, to what extent; and you may also consider whether or not he has been permanently injured, and if so, to what extent; you may also consider his

mental and physical pain and suffering, past, present, or future, if any, occasioned by his injuries, and in your dispassionate judgment allow him such sum as will fairly compensate him insofar as the evidence may here show you he is entitled to damages in these respects." The giving of this instruction is not challenged by defendant's assignments of error, and under it, and the evidence, we are not justified in holding that the amount of the verdict, while large, was the result of passion or prejudice, or that it awarded to the plaintiff other than compensatory damages; hence, we do not hold that the damages awarded are excessive. Fixing the amount of damages in a case of this kind is a matter within the discretion of the jury (Sec. 2378 R. L. 1915) whose verdict will not be interfered with by the court, unless it is so excessive and outrageous, when considered with reference to the circumstances of the case, as to demonstrate that the jury have acted against the rules of law, or have suffered their passions or prejudices to mislead them. (13 Cyc. pp. 121, 124 and authorities cited in notes.)

We have carefully examined the record with reference to all of the errors assigned which were not abandoned, and find no reversible error, either in the admission or rejection of evidence, nor in the instructions, and are of the opinion that the judgment should be affirmed, with costs to plaintiff (defendant in error), and it is so ordered.

Affirmed.

*E. W. Sutton* and *W. L. Stanley* (*Smith, Warren, Hemenway & Sutton* and *Holmes, Stanley & Olson* on the brief) for plaintiff in error.

*E. A. Douthitt* (*Douthitt & Coke* on the brief) for defendant in error.

CONCURRING OPINION OF WATSON, J.

I concur in the conclusion arrived at by the majority that the judgment should be affirmed with costs to plaintiff (defendant in error).

Touching the question of the proximate cause of plaintiff's

injury and the propriety of the trial court's action in submitting this issue to the jury, whatever my views might be upon this question as an original proposition, I am of the opinion that the decision of this court on the former writ of error (ante, p. 66), where the same question was considered and decided, became the law of the case and is not now open for re-examination. On the former hearing the position of this court on the question of proximate cause is expressed in the syllabus as follows:

"The defendant having negligently continued the use of a defective cable on its coal conveyor which, by reason of its defective condition, came off certain pulleys designed to hold it in position, and the plaintiff, an employee of the defendant on the conveyor, in attempting to restore the cable to its proper position was injured. The question, whether the proximate cause of the plaintiff's injury was the negligence of the defendant in failing to furnish a reasonably safe cable for use, is not a question of science or legal knowledge, but a question of fact for determination by a jury."

From this it appears that the court expressly held that the plaintiff's evidence bearing on the question of proximate cause (which evidence was substantially the same on the second trial) was sufficient to carry the case to the jury, and in my opinion it must now be held that the conclusion arrived at then must be the law in this case. What was there decided is not now open for discussion and must be held to be *res adjudicata*. In my opinion this question involved the only substantial defense relied on by the defendant, and unless the court has committed error in the instructions or has admitted or rejected evidence which was prejudicial to the defendant's case the judgment will have to be affirmed.

Counsel for plaintiff in error strongly urge that the former ruling of this court on the question of proximate cause may and should be re-examined on this second writ of error, and, conceding that the view contended for by them is that adopted by the minority of the state courts, cite the case of *Hastings* v. *Foxworthy,* 45 Neb. 676, 34 L. R. A. 321, decided by the supreme

court of Nebraska in 1895, as holding that an appellate court on a second appeal may and should examine and reverse its rulings made on the first appeal when the opinion first expressed is manifestly incorrect. I am of the opinion that the *Foxworthy* case is of little value as an authority in considering the case at bar. In that case (34 L. R. A. 335) the court distinctly states:

"So far as any express decision or actual consideration of the question is concerned, it has never arisen in this case, and following the decision in * * * the question must be solved in favor of the contention of the city unless by *implication* it has formerly been otherwise resolved in this case, and unless, further, the court is bound by such *implied* decision so far as this case is concerned."

Again, on page 336, it is said: "The court may be said to have already three times *impliedly* decided the question now before us * * * *although on no occasion was that question, in fact, considered or actually decided.*"

In the case at bar the question sought to be re-examined has been considered and expressly decided. If not expressly overruled, the doctrine laid down in the *Foxwrothy* case seems to have been abandoned or repudiated by the supreme court of Nebraska. In the case of *Smith* v. *Neufeld,* 61 Neb. 699, decided by the supreme court of Nebraska in 1901, the court, in discussing the doctrine of law of the case, on page 701, says:

"Following an almost unbroken line of authorities in other jurisdictions this court in a number of early cases held that when a question in controversy has been once squarely decided, the decision, if acquiesced in, or if not recalled, becomes the law of the case and is binding upon the parties and those claiming through or under them in all subsequent stages of litigation. This doctrine was, it is true, challenged as harsh and unjust in *City of Hastings* v. *Foxworthy,* 45 Neb. 676, but it has been reiterated and reaffirmed in many cases since decided and may now be regarded as firmly established in the jurisprudence of this state."

On all of the other questions involved in this second writ of error and discussed in the foregoing opinion I concur with the majority in their reasoning and conclusions.